**ORAL ARGUMENT SCHEDULED NOVEMBER 3, 2025**
**No. 25-5243**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES,
et al.,

Plaintiffs-Appellants,

v.

KRISTI NOEM, et al.,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00306 (Moss, J.)

———————————

**REPLY BRIEF FOR APPELLANTS**

———————————

BRIAN C. WARD
   *Acting Assistant Director*
PATRICK GLEN
DAVID KIM
KATHERINE J. SHINNERS
   *Senior Litigation Counsel*
   *Office of Immigration Litigation*
   *General Litigation and Appeals*
     *Section*

BRETT A. SHUMATE
   *Assistant Attorney General*
YAAKOV M. ROTH
   *Principal Deputy Assistant*
     *Attorney General*
DREW C. ENSIGN
   *Deputy Assistant Attorney*
     *General*
BENJAMIN HAYES
   *Senior Counsel to the Assistant*
     *Attorney General*
   *U.S. Department of Justice, Civil*
     *Division*
   *950 Pennsylvania Avenue, NW*
   *Washington, DC 20530*
   *(202) 514-2000*
   *Drew.C.Ensign@usdoj.gov*

# TABLE OF CONTENTS

**Page**

GLOSSARY

TABLE OF AUTHORITIES .........................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................1

ARGUMENT ...........................................................................................5

I.      The Proclamation is a Lawful Exercise of the President's
        Authority under the INA and the Constitution. ..............................5

II.     The Proclamation Lawfully Suspends Asylum for Aliens Who
        Enter the United States in Violation of the Suspension. ...............15

III.    The Guidance does not Violate the Withholding Statute or
        CAT Regulations. ........................................................................24

IV.     The District Court Certified a Universal Class in
        Circumvention of the Prohibition on Nationwide Injunctions
        and the INA. ................................................................................27

        A.      The Sprawling Universal Class Violates Rule 23 ................27

        B.      Section 1252(f)(1) Bars the Classwide Injunction and
                Universal Vacatur of Agency Guidance. ............................29

CONCLUSION ......................................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASE LAW

*American Hospital Association* v. *NLRB*,
  499 U.S. 606 (1991) ................................................................ 17

*Direct Mktg. Ass'n v. Brohl*,
  575 U.S. 1 (2015) .................................................................... 32

*East Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ................................................. 22

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
  575 U.S. 768 (2015) .................................................................. 9

*Epic Systems Corp. v. Lewis*,
  584 U.S. 497 (2018) ............................................................... 19

*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022) ................................................. 29, 30, 33

*Gen. Dynamics Land Sys., Inc. v. Cline*,
  540 U.S. 581 (2004) ............................................................... 23

*Gonzalez v. DHS*,
  508 F.3d 1227 (9th Cir. 2007) .............................................. 32

*Huisha-Huisha v. Mayorkas*,
  27 F.4th 718 (D.C. Cir. 2022).... 1, 2, 3, 5, 6, 7, 8, 11, 12, 15, 17, 18, 19, 20, 23, 26

*INS v. Aguirre-Aguirre*,
  526 U.S. 415 (1999) ........................................................ 20, 21

*Lopez v. Davis*,
  531 U.S. 230 (2001) ............................................................... 17

*N.S. v. Dixon*,
  141 F.4th 279 (D.C. Cir. 2025) ............................................................... 30

*Noem v. Doe*,
  145 S. Ct. 1524 (2025) ........................................................................... 17

*Omar v. McHugh*,
  646 F.3d 13, 17 (D.C. Cir. 2011) ........................................................... 27

*Sale v. Haitian Centers Council, Inc.*,
  509 U.S. 155 (1993) ................................................................................. 8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .......................................................................... 4, 28

*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (June 27, 2025) ............................................................ 28

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ........................................................... 9, 11, 12, 14

*USDA v. Kirtz*,
  601 U.S. 42 (2024) .................................................................................. 9

*Yee v. City of Escondido*,
  503 U.S. 519 (1992) ............................................................................... 25

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ............................................................................... 25

## STATUTES LAW

8 U.S.C. § 1158(a) ........................................................................... 18, 19

8 U.S.C. § 1158(b)(2)(C) ................................................................. 21, 22

8 U.S.C. § 1158(d)(1)................................................................22

8 U.S.C. § 1158(d)(5)................................................................22

8 U.S.C. § 1158(d)(5)(B)........................................................21, 22

8 U.S.C. § 1158(d)(5)(A).............................................................22

8 U.S.C. § 1182(f)......................................5, 7, 8, 9, 12, 25, 26

8 U.S.C. § 1185(a)(1)..................................................................7,

8 U.S.C. § 1225(b)(1)............................................................8, 31

8 U.S.C. § 1225(b)(1)(A)(ii).........................................................24

8 U.S.C. § 1225(b)(1)(B).............................................................24

8 U.S.C. § 1229a(a)(3)..........................................................8, 9, 14

8 U.S.C. § 1231(h)....................................................................24

8 U.S.C. § 1252(a)(2)(A)(i)..........................................................23

8 U.S.C. § 1252(a)(2)(A)(iii)........................................................23

8 U.S.C. § 1252(a)(2)(A)(iv).........................................................23

8 U.S.C. § 1252(a)(2)(B)(ii).........................................................23

8 U.S.C. § 1252(f)(1)...........................................................29, 33

42 U.S.C. § 265........................................................................6

## FEDERAL REGULATIONS

8 C.F.R. § 208.30......................................................................27

8 C.F.R. § 208.30(e)(2) ...................................................................... 24

8 C.F.R. § 235.3(b)(2) ....................................................................... 27

## FEDERAL REGISTER

89 Fed. Reg. 103370-01 ...................................................................... 24

90 Fed. Reg. 8334................................................................7, 11, 12, 20

90 Fed. Reg. 8336...................................................................... 16

## U.S. CONSTITUTION

U.S. Const. Art. II, § 1................................................................. 16

U.S. Const. art. II § 3................................................................. 30

## PUBLIC LAW

Illegal Immigration Reform and Immigrant Responsibility Act of 1996,
Pub. L. No. 104-208, Div. C § 302(a), 110 Stat. 3009-579 (Sept. 30,
1996)................................................................................. 10

Immigration and Nationality Act of 1952, Pub. L. No. 414, Ch. 477, §
212(e), 66 Stat. 188 (June 27, 1952) ...................................... 10

## PRESIDENTIAL PROCLAMATIONS

Proclamation No. 10,888 .............................................................. 1

# GLOSSARY

| | |
|---|---|
| INA | Immigration and Nationality Act |
| CAT | Convention Against Torture |

## INTRODUCTION AND SUMMARY OF ARGUMENT

The President issued Proclamation 10888 to address the disastrous and unprecedented crisis of illegal immigration that arose during the prior administration, which overwhelmed the Government's resources at the southern border and resulted in unknown millions of unvetted aliens flooding the country. That surge of illegal immigration triggered a spree of illegal activity at the border—including trafficking in humans, drugs, and weapons—which took a devastating toll on American citizens. The challenged Proclamation has been an essential—indeed, an "indispensable"—tool for securing the border and has produced the lowest levels of illegal border crossings in decades. But the district court's decision would upend that success and gravely undermine the Government's ability to maintain a secure border and thereby protect the well-being of American citizens. This Court should reverse.

I.     Sections 1182(f) and 1185(a) supplement the President's Article II authority by authorizing the President to suspend the entry of aliens whose presence would be "detrimental to the interests of the United States." That power to exclude carries with it the power to expel. *Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022). Just as the

power to ban "introductions" of persons into the United States includes that authority to exclude, so too does the power to prohibit "entries" at issue here.  *See id.*

Plaintiffs identify no principled basis for distinguishing this case from *Huisha-Huisha*.  It does not matter that Section 1182 addresses entry, rather than removal; the same was true of the Title 42 provision reviewed in *Huisha-Huisha*, and yet this Court unanimously held that a "suspension on entry" implied the power to repatriate.  The same result should obtain here.  Nor does the Government's theory conflict with the Immigration and Nationality Act's removal procedures, as Plaintiffs argue.  The INA expressly contemplates removal through alternative statutory authority, and Section 1182(f) is one example.  Besides, aliens subject to the Title 42 expulsion procedures in *Huisha-Huisha* likewise were subject to removal under the INA's default procedures.  But this Court saw no conflict: it held that the Title 42 power to exclude *itself* carried the concomitant power to repatriate, regardless of the existing Title 8 removal provisions.  The same logic applies here.

**II.**     The Proclamation and guidance likewise are lawful exercises of the Executive's discretion to preemptively deny asylum to aliens that

violate the President's entry bar—whose legal validity is not even challenged here. Contrary to Plaintiffs' suggestion, the Proclamation directed the denial of asylum for those subject to the Proclamation, and the Secretary's guidance documents implement that directive. No more is needed.

Otherwise, Plaintiffs argue that the Executive's preemptive denial of asylum to those subject to the Proclamation is inconsistent with several features of the asylum statute. Two members of the stay panel rejected that argument, and for good reason. At bottom, those arguments simply confuse asylum *eligibility* with the *discretionary denial* of asylum and conflict with *Huisha-Huisha*. There, this Court held that the Executive could deny aliens the ability to apply for asylum: Asylum is purely a matter of Executive discretion, and once the decision "has already been made[,]" then allowing aliens to nonetheless apply "would be futile." *Huisha-Huisha*, 27 F.4th at 731. That same rationale applies equally—and is ultimately controlling—here.

**III.** The guidance likewise does not violate the withholding statute or CAT regulations. The withholding statute is not judicially enforceable. Even if it were, Plaintiffs' objection that the guidance violates the

3

withholding statute depends on the same flawed argument that Section 1182(f) does not authorize repatriation. And the same basic flaw underlies Plaintiffs' arguments regarding CAT regulations.

**IV.** Finally, the district court's planet-wide class violates both Rule 23 and 8 U.S.C. § 1252(f). Plaintiffs acknowledge that the class definition violates Rule 23, but insist that the stay panel's modification cures the error. It does not. Even the modified definition includes aliens who are outside the United States and face no imminent risk of being subject to the Proclamation. Article III does not permit certification of a class that sweeps up individuals who face no imminent injury and thus lack standing on their own. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Rule 23 does not—and cannot—short circuit the bedrock requirements of Article III.

Separately, the district court's universal injunction and vacatur are barred by Section 1252(f). Plaintiffs say that provision does not apply because the injunction runs against Sections 1182(f) and 1185(a), not a provision covered by Section 1252(f). Not so. By enjoining the Government's use of Sections 1182(f) and 1185(a), the injunction forces removals to occur through Section 240 and expedited removal

proceedings—provisions that *are* subject to Section 1252(f). The same rule applies to the district court's vacatur of the guidance, which has the exact same effect as a class-wide injunction and fits squarely within Section 1252(f)'s prohibition on "enjoin[ing] or restrain[ing] the operation" of a covered provision.

This Court should reverse the district court's judgment.

## ARGUMENT

### I. The Proclamation is a Lawful Exercise of the President's Authority under the INA and the Constitution.

Sections 1182(f) and 1185(a) supplement the President's Article II authority by authorizing him to suspend the entry of aliens he deems "detrimental to the interest of the United States." 8 U.S.C. § 1182(f). The power to exclude entry includes the power to repel or repatriate those who violate the entry bar. That conclusion follows from the text, this Court's and the Supreme Court's precedent, and longstanding principles of statutory interpretation. *See* Opening Br. 27-42.

This Court has already held that a statutory authorization to prohibit the introduction of aliens carries with it the power to remove or repatriate those who violate that prohibition. In *Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022), the Court held that the

5

statutory authority in 42 U.S.C. § 265 to prohibit "the introduction of persons" into the United States impliedly authorized the Center for Disease Control and Prevention to expel those who violated the entry bar, reasoning that the prohibition on entry would "be rendered largely nugatory if the Executive could not take any action against a[n otherwise] covered alien who disregarded the prohibition and managed to set foot on U.S. soil." *Id*. at 729. That same logic applies to Section 1182(f)'s authority to suspend entry. Opening Br. 29-30, 32.

Plaintiffs insist that *Huisha-Huisha*'s logic cannot be applied to Sections 1182(f) and 1185(a) because that would create conflict with other provisions in the INA. That is wrong.

A.    Plaintiffs first say that Section 1182(f) cannot be read to authorize repatriation or removal because Section 1182 addresses entry, not removal. Answering Br. 25. Yet the Title 42 authority in *Huisha-Huisha* was limited to "suspension of entr[y]" and the "introduction of persons or property," 42 U.S.C. § 265, and this Court nonetheless held that carried the implied authority to expel as well. 27 F.4th at 291. So too here. The President invoked Section 1182(f) in part because the "sheer number of aliens entering the United States has overwhelmed the

6

system and rendered many of the INA's provisions ineffective"— including the provisions governing removal, with the result that "millions of aliens who potentially pose significant threats to health, safety, and national security have moved into communities nationwide." 90 Fed. Reg. at 8334. Removing or repatriating aliens who violate the entry suspension is thus a critical and necessary part of alleviating the very situation that the President found was "detrimental to the interest of the United States," 8 U.S.C. § 1182(f)—just as expelling aliens who violated the Title 42 prohibition was a critical and necessary part of alleviating the situation giving rise to the prohibition (*i.e.*, the spread of communicable disease), *see Huisha-Huisha*, 27 F.4th at 729; *see* Opening Br. 29-30, 32.

Plaintiffs also ignore that Section 1185(a) expressly makes it unlawful for an alien "to depart from" or "attempt to depart from" the country except under regulations "and subject to such limitations and exceptions as the President may prescribe." 8 U.S.C. § 1185(a)(1); *see* Opening Br. 33-34. Working in conjunction with Section 1182(f), Section 1185(a) thus makes clear that when the President suspends entry under the former, the latter gives him independent authority to set the

conditions, limitations, and exceptions to "depart[ures]" from the country—including, as here, immediate repatriation as an exception to the ordinary removal procedures under Sections 1225 or 1229a.

*Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155 (1993), confirms the application of these principles to Section 1182(f). *See* Opening Br. 32-33. Plaintiffs dismiss *Sale* as only addressing a barrier to entry, not removal. But nothing in Section 1182(f) *explicitly* grants the Executive authority to erect a blockade or interdict aliens in international waters; nonetheless, *Sale* upheld such measures as appropriate means of ensuring that the Section 1182(f) suspension on entry was effective. 509 U.S. at 187. *Sale* thus confirms the Executive's authority to take actions to ensure that a Section 1182(f) entry bar is not a toothless tiger.

B.    Switching gears, Plaintiffs argue that extending the logic of *Huisha-Huisha* to Section 1182(f) would negate the INA's explicit removal provisions. Answering Br. 25-26, 27. Not so. To be sure, Section 240 removal proceedings are the default methods for effecting removal— but Section 240 itself recognizes alternative methods "otherwise specified in [the INA]," 8 U.S.C. § 1229a(a)(3). Expedited removal (8 U.S.C. § 1225(b)(1)) is one such method; and the limitations and exceptions on

"depart[ure]" in Section 1185(a)(1), imposed in conjunction with a temporary suspension of entry under Section 1182(f), is another. Opening Br. 39.[1] Statutes often provide overlapping authority, *see id.* at 40 (citing *USDA v. Kirtz*, 601 U.S. 42, 63 (2024)), as is the case here. It is well-established that Section 1182(f) authorizes the President to "impose entry restrictions *in addition to* those elsewhere enumerated in the INA," *Trump v. Hawaii*, 585 U.S. 667, 684 (2018). When the President does so, he is not "displacing" the INA but rather implementing his authority under it.

Nor would the Government's interpretation authorize the Executive to "turn off the INA's procedures governing asylum and removal whenever it desires and for as long as it desires." Answering Br. 29. When the President invokes Section 1185(a)(1) in conjunction with a temporary entry suspension under Section 1182(f), he does not "turn off" the INA's procedures—which remain active, *e.g.* for aliens not subject to

---

[1] Plaintiffs say that Section 1182(f) does not fit the bill because it does not "expressly confer[]" a removal power, Answering Br. 26—but that limitation appears nowhere in the statute. *See* 8 U.S.C. § 1229a(a)(3); *see EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015) (courts may not "add words to the law").

9

the Proclamation—but simply "turns on" alternative procedures specified in the INA itself.[2]

More fundamentally, Plaintiffs' reliance on the INA's default removal provision cannot be squared with *Huisha-Huisha*. After all, aliens who entered the United States in violation of the Title 42 orders without documents *also* were subject to removal under Title 8's removal procedures—just as aliens who enter the United States in violation of a Section 1182(f) suspension on entry. The availability of those Title 8 removal procedures, however, did not negate the *implied* power in Section 265 to expel aliens who violated its prohibition on entry. It does not for Section 1182(f) either. And it makes no difference that the INA's removal provisions appear in Title 8 rather than Title 42. *Cf.* Answering Br. 29 (Section 265 "comes with no companion removal authorities"). What matters is that Title 8's default removal procedures were *available* for the removal of undocumented aliens who entered the United States

---

[2] The expedited removal provisions do not suggest that Section 1182(f) excludes removal authority. Section 1182(f) was part of the INA when originally adopted in 1952. *See* Immigration and Nationality Act of 1952, Pub. L. No. 414, Ch. 477, § 212(e), 66 Stat. 188 (June 27, 1952). Expedited removal did not become law until 1996. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C § 302(a), 110 Stat. 3009-579 (Sept. 30, 1996).

in violation of a Title 42 order.  Nonetheless, *Huisha-Huisha* held that

Section 265's power to exclude would be "rendered largely nugatory"

absent an accompanying power to exclude.  27 F.4th at 729.  So too here.

*Cf*. Answering Br. 27, 29-30.  That is especially true given the Supreme

Court's recognition that Section 1182(f) can create restrictions "*in

addition to* those elsewhere enumerated in the INA."  *Hawaii*, 585 U.S.

at 684 (emphasis added).

Plaintiffs grasp at straws, arguing that *Huisha-Huisha* is different

because Section 265 "aim[ed] to prevent disease spread that can *rapidly*

occur" and "would become ineffective absent summary removals."

Answering Br. 29.  That is no distinction.  Opening Br. 35-36.  The

Proclamation was necessary because the flood of millions of illegal aliens

across the southern border had "overwhelmed the system and rendered

many of the INA's provisions ineffective," resulting in "millions of aliens

who potentially pose significant threats to health, safety, and national

security" entering the country.  90 Fed. Reg. at 8334.  Just as the power

to expel was needed for Section 265 to be effective, so too the power to

quickly remove or repatriate is necessary to allow the Section 1182(f)

entry bar to be effective in remedying that which the President deemed

to be "detrimental to the interests of the United States." 8 U.S.C. § 1182(f). Moreover, to the extent *Huisha-Huisha* was driven by the public health component of the Title 42 authority, the Proclamation imposed the entry bar in part because the entry of "innumerable aliens potentially carrying communicable diseases of public health significance" pose a "significant threat to [the] health" of the American public. 90 Fed. Reg. at 8334.

C. Plaintiffs urge a narrow reading of Section 1182(f) because no previous administration has used Section 1182(f) in this manner. Answering Br. 26. But discretionary decisions not to exercise statutory authority to its fullest are no basis for limiting an expansive grant of authority. *Cf. Hawaii*, 585 U.S. at 692-93 (expressing reluctance to "confine expansive language in light of its past applications"). As Plaintiffs acknowledge, Presidents of both political parties have used Section 1182(f) to prevent the entry of aliens or classes of aliens. Answering Br. 26. But the Nation never faced a border crisis like the one it confronted on January 20, 2025. The sheer number of illegal aliens pouring into the country was alone unprecedented—but that influx set the stage for a staggering rise in criminal activity by international

12

organizations and criminal cartels engaged in smuggling humans, drugs, and weapons—all of which threatened the lives of American citizens. Opening Br. 10. Plaintiffs never meaningfully grapple with the scale of the border crisis that existed before the Proclamation was issued—and indeed appear to view the scale of illegal crossings as a feature (and not a bug) of the pre-Proclamation regime.

The President appropriately used the expansive authority in Sections 1182(f) and 1185(a) to successfully address that unprecedented crisis. Indeed, the Proclamation has proved to be "the most effective tool for managing the emergency at the southern border." JA084. By cutting off the ability of millions of aliens to abuse the asylum system, the Proclamation stemmed the tide of the illegal invasion and ended the crisis that had enabled the criminal and terrorist organizations to run roughshod over the Nation's borders and exploit the American people. *See* Opening Br. 14-15

D. Finally, Plaintiffs contend that the entry fiction (*see* Opening Br. 41-42) is irrelevant to this case, arguing that "no amount of piling fiction on fiction can make noncitizens who are *actually in* the United States" exempt from "Congress's 'sole and exclusive' procedures for

13

removal, 8 U.S.C. § 1229a(a)(3)."  Answering Br. 32.  That misses the point.  The INA states that "[u]nless otherwise specified," Section 240 proceedings are the "sole and exclusive procedure for determining whether an alien may be admitted to the United States or, *if the alien has been so admitted*, removed from the United States."  8 U.S.C. § 1229a(a)(3) (emphasis added).  An alien who circumvents an entry suspension has not been "admitted," and thus by its terms the "sole and exclusive" limitation on *removal* does not apply in the first place.  The entry fiction—which, despite its name, is not a "fiction" but rather a legal doctrine that is a bedrock principle of immigration law—treats all such aliens as applicants for admission, and the entry suspension makes clear that those aliens are inadmissible under Section 1182(f) (which satisfies the "unless otherwise specified" exception). *See Hawaii*, 585 U.S. at 685–88.  The application of the entry fiction in these circumstances simply treats all aliens subject to the entry bar identically, even if some do manage to evade that bar and effect a physical (yet unlawful) entry into the United States.

14

\*     \*     \*

The power to exclude includes the power to expel. That is the central holding of this Court's decision in *Huisha-Huisha* and follows inexorably from longstanding principles of statutory construction. The district court erred in holding otherwise.

## II. The Proclamation Lawfully Suspends Asylum for Aliens Who Enter the United States in Violation of the Suspension.

The Proclamation and subsequent guidance lawfully exercised the Executive's discretion to preemptively deny asylum to aliens subject to the suspension on entry, including the ability to apply using the asylum procedures. Opening Br. 43-47. Because the "asylum decision has already been made, … those procedures would be futile." *Huisha-Huisha*, 27 F.4th at 7. Two members of the stay panel applied the rationale from *Huisha-Huisha* to conclude that the Proclamation and guidance likely are a lawful exercise of the President's discretionary authority to deny asylum. *See* Stay Op. 37-39 (Millett, J.)[3]; Stay Op. 55 (Katsas, J.). This Court should do the same.

---

[3] As in the Opening Brief, in its citations to the Court's stay order and accompanying opinions, the Government uses the pagination at the upper right-hand corner of the electronically-filed document.

A.     Plaintiffs begin with the threshold objection that "neither the Proclamation nor the Guidance actually purports to operate as a denial of asylum on the merits."  Answering Br. 34 (citing Stay Op. 47-48 (Pillard, J., dissenting)).  That is wrong.  They say the Proclamation cannot suffice to preemptively deny asylum because "[t]he President has no authority to deny asylum on a discretionary basis."  Answering Br. 34.  But (1) the Secretary of Homeland Security *does* have that authority; (2) the Secretary answers to the President, *see* U.S. Const. Art. II, § 1, cl. 1; and (3) the President has expressly directed the Secretary to "take all appropriate action" to implement the Proclamation's terms, which plainly seeks to foreclose granting asylum to covered aliens.  90 Fed. Reg. at 8336.  That is enough.  Stay Op. 37-38 (Millett, J.); Stay Op. 2 (Katsas, J.).

Regardless, the DHS guidance states explicitly that aliens subject to the Proclamation "are not permitted to apply for asylum."  Stay Op. 35 (Millett, J.) (emphasis omitted) (quoting JA101, 107).  That language refutes Plaintiffs' citation-less assertion that "the Guidance does not invoke" the Secretary's discretionary authority over asylum.  Answering Br. 34.  As Judge Millet correctly observed, "[t]he Proclamation and the

16

guidance contain far more language about foreclosing asylum than the emergency order address in *Huisha-Huisha* did," and "yet this court found that such silence was sufficient to close the door on the asylum process across the board." Stay Op. 35 (Millett, J.).

Alternatively, Plaintiffs argue that the preemptive denial of asylum departs without a "reasoned basis" from a supposed "decades-old approach" of providing "case-specific" asylum decisions. Answering Br. 34-35. Even on its own terms, the statute does not require individualized assessments, and the Supreme Court has otherwise made clear that where a statute grants the Executive discretion, that discretion may be exercised on a categorical basis. *See, e.g.*, *Lopez v. Davis*, 531 U.S. 230, 243-44 (2001); *American Hospital Association* v. *NLRB*, 499 U.S. 606, 612 (1991); *cf. Noem v. Doe*, 145 S. Ct. 1524 (2025) (No. 24A1079). Besides, *Huisha-Huisha*'s approval of a categorical preemptive denial of asylum belies Plaintiffs' assertion that the Government has always conducted individualized determinations.

B. Plaintiffs contend that the preemptive denial of asylum by the Proclamation and guidance is inconsistent with several features of the asylum statute. Answering Br. 35-41. Those arguments are without

17

merit because, at their core, they mistakenly conflate asylum *eligibility* and the *discretionary denial* of asylum to otherwise-eligible applicants, and erroneously view such discretionary denials as requiring individualized consideration that is subject to judicial review.

1.     Plaintiffs argue that the Executive cannot implement a categorical preemptive denial of asylum because the asylum statute "confers a right to apply for asylum." Answering Br. 35 (citing 8 U.S.C. § 1158(a)). That argument was explicitly considered and unanimously rejected by *Huisha-Huisha*. The Court recognized that the Title 42 Order permissibly "foreclosed" not only "a grant of asylum" but also "the statutorily mandated procedures that aliens use to apply for asylum." 27 F.4th at 731. Rather than require the Government to entertain asylum applications destined for denial, the Court interpreted Section 1158(a)'s right to apply for asylum in light of the Executive's discretionary authority to deny such request: "[I]f the asylum decision has already been made[,] then those procedures would be futile." *Id*.

That holding is directly on point and controlling. Nothing requires the Government to go through the hollow motions of considering futile asylum applications, at least in the circumstances presented by this case.

18

*See* Stay Op. 37-38 (Millett, J.); Stay Op. 55 (Katsas, J.). Nothing in the INA compels such empty formalisms—as this Court already recognized in *Huisha-Huisha*.

Emphasizing the "right to apply" for asylum also ignores that Section 1158(a) must be read in conjunction with Sections 1182(f) and 1185(a), which are the statutory basis for the Proclamation's directive to repel or repatriate aliens who violate the entry bar. *See* Part I, *supra*; *see Epic Systems Corp. v. Lewis*, 584 U.S. 497, 510 (2018). As in *Huisha-Huisha*, "[t]he best reconciliation of the two statutes is based on the discretionary nature of asylum," and when the Executive "has shown an intent to exercise[] that 'discretion' by foreclosing asylum for [a] specific subset of border crossers covered by [the Proclamation]," 27 F.4th at 730-31, the asylum statute is no barrier.

Plaintiffs say *Huisha-Huisha* does not apply because its holding that Section 265 could displace the asylum procedures rested on having identified a "conflict" between the two statutes. Answering Br. 41. Of course, two members of the stay panel have already rejected such a narrow reading of *Huisha-Huisha*. *See* Stay Op. 37 (Millett, J.); Stay Op. 55 (Katsas, J.). In any event, the same dynamic exists here: Sections

1182(f) and 1185(a) authorize the Executive to remove or repatriate aliens who violate the suspension on entry and announce a discretionary policy to deny asylum to all such aliens, even if "[i]n normal times," those aliens might have filed successful asylum applications. *Huisha-Huisha*, 27 F.4th at 730. Those provisions reconcile in the same way as Section 265 and the asylum statute in *Huisha-Huisha*—"based on the discretionary nature of asylum." *Id.*[4]

It makes no difference that Section 265 refers to "the right to introduce … persons and property." Answering Br. 41. True, *Huisha-Huisha* said this language "perhaps" is alluding to "suspension of [asylum] procedures." 27 F.4th at 731. But that was the periphery of the Court's analysis; the core rested on the "discretionary nature of asylum" as authorizing the preemptive, categorical suspension of asylum through

---

[4] Plaintiffs say that the actual conflict in *Huisha-Huisha* was that "[a]dhering to the asylum statute … could exacerbate the spread of communicable diseases that Section 265 aims to prevent." Answering Br. 41. That is not what *Huisha-Huisha* says. *See* 27 F.4th at 730-31. And in any event, adhering to the asylum statute here would exacerbate the "overwhelm[ing]" of the immigration system that has caused "significant threats to health, safety, and national security" that the Proclamation aims to prevent. 90 Fed. Reg. at 8334.

a Title 42 order. That rationale fully applies to Sections 1182(f) and 1185(a).

2. The asylum statute's grant of rulemaking authority does not imply a lack of authority by the Executive to categorically deny asylum applications. Plaintiffs note that the asylum statute authorizes the Attorney General and Secretary of Homeland Security to promulgate additional regulations that impose additional limits on asylum eligibility. Answering Br. 38 (citing 8 U.S.C. § 1158(b)(2)(C), (d)(5)(B)). That provision is irrelevant—it addresses criteria for asylum *eligibility*, not the discretionary decision whether to grant asylum to someone who is eligible. Opening Br. 46. Petitioner dismisses this as a "distinction without a difference," Answering Br. 38, but it is not. The statute requires that any additional limits imposed on asylum *eligibility* be "consistent with" the asylum statute. 8 U.S.C. § 1158(b)(2)(C), (d)(5)(B). By contrast, the asylum statute leaves the decision whether to *grant* asylum exclusively in the Executive's discretion. *See INS v. Aguirre-*

21

*Aguirre*, 526 U.S. 415, 420 (1999) ("[W]hether asylum should be granted to an eligible alien is committed to the Attorney General's discretion.").[5]

Nor does the Government's position conflict with 8 U.S.C. § 1158(d)(5)(B).  Answering Br. 39.  That provision directs the Attorney General to "establish a procedure for the consideration of asylum applications," and lists several requirements that must be part of the adopted procedures addressing the process for considering asylum applications.  *Id.* § 1158(d)(1), (5).  For example, the procedures must require an interview or hearing "not later than 45 days" after the application is filed, requires "final … adjudication of the asylum application … within 180 days," and sets a timeline for appealing an adverse decision.  *Id.* § 1158(d)(5)(A)(ii)-(iv).  The statute then authorizes the Attorney General to "provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with this chapter."  *Id.* § 1158(d)(5)(B).

That statute is irrelevant.  The Proclamation's up-front denial of asylum and the ability to initiate asylum proceedings is different in kind

---

[5] That distinction dispenses with Plaintiffs' reliance on *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018), which addressed rulemaking under 8 U.S.C. § 1158(b)(2)(C), (d)(5)(B).

from the "limitations" enumerated in the statute—all of which address limits on the consideration of an asylum application after proceedings have been initiated by the filing of an application. *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 582 (2004) ("[A] phrase gathers meaning from the words around it"). In any event, the Proclamation's preemptive and discretionary denial of asylum applications makes *all* such procedures pointless for covered aliens. The INA is best read not to require such wasteful procedures and facile formalisms.

3.      Next, Plaintiff argues that the President must be forbidden from pre-denying asylum applications because "[t]he statute provides that discretionary denials of asylum are individualized and subject to judicial review." Answering Br. 40 (citing 8 U.S.C. § 1252(a)(2)(B)(ii)). To begin, that argument is foreclosed by *Huisha-Huisha*, which endorsed the preemptive categorical denial of asylum claims *without* judicial review. 27 F.4th at 730-31. In any event, Plaintiffs ignore that judicial review of asylum denial is available only for aliens in Section 240 proceedings—*not* for those in expedited removal or direct repatriation. 8 U.S.C. § 1252(a)(2)(A)(i), (iii), (iv).

23

Nor is there tension with the statutory provisions governing credible fear screening. *Cf.* Answering Br. 40; *see* 8 U.S.C. § 1225(b)(1)(A)(ii). The statutory screening determines if "the alien could establish eligibility for asylum," but aliens subject to the Proclamation will not be eligible because asylum is to be denied as a matter of discretion. 8 U.S.C. § 1225(b)(1)(B)(v); *supra*, pp. 15-17. Thus, the screening for asylum will always result in a negative determination, just as it does when a mandatory bar to asylum is applied during credible fear screening. *See, e.g.*, 8 C.F.R. § 208.30(e)(2), (5)(ii)(A); 89 Fed. Reg. 103370-01 (Dec. 18, 2024) (implementing prior Proclamations barring entry as part of credible fear screening under 8 U.S.C. § 1225(b)(1)(B)). And because aliens subject to the bar will necessarily be denied asylum, they are not being deprived of any process due under the statute.

## III.    The Guidance does not Violate the Withholding Statute or CAT Regulations.

**A.    Withholding:** The guidance does not violate the statutory withholding provision. Opening Br. 48-49. As a threshold matter, Section 1231(h) expressly states that Plaintiffs have no "legally enforceable" "substantive or procedural right" to withholding of removal.

8 U.S.C. § 1231(h); *see* Opening Br. 49.[6]  Plaintiffs say that Section 1231(h) does not "'deprive litigants of the right to rely on' other sources of law to assert violations of Section 1231."  Answering Br. 45 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).  But Plaintiffs are not relying on "other sources of law" outside Section 1231; they say the guidance is unlawful because it conflicts with Section 1231(b)(3)(A) itself. Plaintiffs also claim that applying the plain text of Section 1231(h) "would make a mockery of the countless cases where courts have enforced the withholding statute."  Answering Br. 45.  But Plaintiffs do not assert that Section 1231(h) was even raised in those cases, meaning that the courts did not have to—and thus did not—confront the issue.

Plaintiffs argue that Section 1182(f) does not authorize the restriction on withholding, but their argument rests on the same false premise as their prior arguments—that Section 1182(f) does not authorize removal or repatriation of aliens who violate a suspension bar.

---

[6] Plaintiffs incorrectly assert (Answering Br. 45) that the Government's reliance on Section 1231(h) is "forfeited."  The Government may "make any argument in support of [its] claim" that Plaintiffs are not entitled to relief on their withholding claim; "parties are not limited to the precise arguments they made below."  *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

*Supra*, p. 5–15.  Section 1182(f) is not a "general permission" that must give way to Section 1231(b)(3).  *Cf.* Answering Br. 43.  It is a specific authority that applies only at a specific time.  If anything, Section 1231(b)(3) is the "general" provision:  it applies generally in removal proceedings, whereas Section 1182(f) is time-limited and kicks in only upon a Presidential determination.  8 U.S.C. § 1182(f).  In any event, the two statutes can be reconciled.  *See Epic Systems Corp.*, 584 U.S. at 510. Section 1231(b)(3) applies to removal proceedings under Section 240 or expedited removal, whereas Sections 1182(f) and 1185(a) authorize removal or repatriation outside the default removal proceedings.  *Supra*, p. 5–15.  This is not "invent[ing] a new form of removal," Answering Br. 44, any more than in *Huisha-Huisha*.  *Supra*, p. 10–12.

**B.    CAT Regulations:**  The guidance's procedures for aliens to raise claims for protection under the Convention Against Torture (CAT) is lawful.  Opening Br. 49-51.  Like the district court, Plaintiffs do not identify any *statutory* authority that renders the guidance's CAT

26

procedures unlawful.[7]  Answering Br. 44-46.  They say the procedures conflict with the regulation (8 C.F.R. § 208.30), but that regulation applies only to aliens subject to the expedited removal statute, not removal or repatriation under Section 1182(f) and 1185(a).  *See* Opening Br. 51.[8]

## IV. The District Court Certified a Universal Class in Circumvention of the Prohibition on Nationwide Injunctions and the INA.

The district court's sweeping, planet-wide prospective class—even as modified by the stay panel—violates Rule 23 and the INA's prohibitions on class-wide relief in this context.

### A. The Sprawling Universal Class Violates Rule 23.

The district court's sprawling injunction violates Rule 23(a) and (b). Opening Br. 52-59.  Plaintiffs acknowledge that the district court's class

---

[7] The treaty itself is not self-executing and creates no rights except as implemented by Congress. *Omar v. McHugh*, 646 F.3d 13, 17 (D.C. Cir. 2011).

[8] For the first time in their Answering Brief, Plaintiffs argue that aliens should not be required to manifest or express fear to be assessed for CAT, and that they instead must be affirmatively asked whether they fear removal, citing 8 C.F.R. § 235.3(b)(2). Answering Br. 45-46.  Again, this requirement does not appear in any statute and, like § 208.30, § 235.3(b)(2) applies only in "case[s] in which the expedited removal provisions will be applied."

certified must—at minimum—be limited in the manner identified by the stay panel. See Answering Br. 47-48 (citing Stay Op. 22 (Millett, J., concurring)); Opening Br. 56-59. That much is necessary—but it is not sufficient.

Rule 23 does not allow certification of classes that sweep up aliens who are not currently or imminently going to incur an Article III injury. Opening Br. 53-54 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Yet even as modified, the class definition includes aliens located anywhere on the entirety of Earth who *may* at some unknown time be subject to the Proclamation. Answering Br 47 (reproducing class definition). The inclusion of class members without an imminent injury-in-fact violates Rule 23 and poses "serious constitutional problems" by facilitating the provision of "relief to a large number of individuals who lack Article III standing." Stay Op. 56 (opinion of Katsas, J.). It is also a transparent end-run around *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (June 27, 2025), which held that universal injunctions exceed federal courts' equitable authority.

**B.** **Section 1252(f)(1) Bars the Class-wide Injunction and Universal Vacatur of Agency Guidance.**

The district court's class-wide injunction and vacatur separately violates 8 U.S.C. § 1252(f)(1), which prohibits federal courts (other than the Supreme Court) from "entering injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022); *see* Opening Br. 59-65. The lower court's injunction does exactly what Section 1252(f)(1) forbids: it entered a class-wide injunction and vacatur that forced the Government to "take … action[] to enforce, implement, or otherwise carry out" Section 240 or expedited removals. Opening Br.61-62. That was error.

1. Plaintiffs say Section 1252(f) does not apply because it focused on the "conduct" that has been enjoined, not the "practical" consequences of the injunction. Answering Br. 51. That is a false distinction. The lower court enjoined the Government "conduct" of effecting removals *outside* Section 240 and expedited removal procedures; therefore, the injunction orders the Government carry out removals under those provisions—*i.e.*, "to take … action[] to enforce, implement, or otherwise carry out" the Section 240 and expedited removal provisions. *Aleman*

29

*Gonzalez*, 596 U.S. at 550; *cf. N.S. v. Dixon*, 141 F.4th 279, 286–90 (D.C. Cir. 2025) (bar applies even where plaintiffs framed relief in terms of a non-covered provision). As even the district court acknowledged, "but-for the Proclamation and guidance, the putative class members' claims [for relief] would, in all likelihood, be processed pursuant to the provisions of the INA governing expedited removal … or regular removal." JA308.

Plaintiffs say Section 1252(f) does not apply because the lower court's injunction allows the Government to "choose" whether to pursue removal. Answering Br. 51, 52. That is a fiction. As Judge Katsas explained, "it is no answer to say that the government need not carry out any removals at all," as that would "be a wholesale abdication of its enforcement responsibilities under the INA." Stay Op. 59 (Katsas, J., concurring in part and dissenting in part); *cf.* U.S. Const. art. II § 3 (The President "shall take Care that the Laws be faithfully executed."). While Plaintiffs might desire an immigration-enforcement-free regime, the Government must carry out *some* removals, and the district court's injunction commands that those removals occur under Section 240 or

30

expedited removal proceedings provisions subject to Section 1252(f).[9] That falls squarely within Section 1252(f)(1)'s prohibition on class-wide injunctions "order[ing] federal officials to take … actions to … implement" covered provisions. *Aleman-Gonzalez*, 596 U.S. at 550; *see* Stay Op. 58 (Katsas, J., concurring in part and dissenting in part).

Plaintiffs' argument, that Section 1252(f)(1) is agnostic as to "why" an injunction issued, attacks a straw man. *Cf*. Answering Br. 52-53. The Government has not argued that Section 1252(f)(1)'s application turns on the reasons for the injunction, but what the injunction requires the Government *to do*. And here, the court's injunction "*require[s]* [the Government] to return to the processes that Congress required" for removal under §§ 1225(b)(1) and 1229a—in direct tension with § 1252(f)(1). JA314 (emphasis added). Therefore, Section 1252(f)(1) applies. To be sure, the provision does not apply merely because an injunction has incidental effects on a covered provision or when it is "held

---

[9] Plaintiffs' accusation that the Government's position is Kafkaesque is really just an objection to *Aleman-Gonzalez* itself. That case makes crystal clear that Section 1252(f)(1) precludes class-wide injunctive relief, even if the Government is operating covered provisions *unlawfully*. 596 U.S. at 552-54. Plaintiffs are free to ask the Supreme Court to overturn *Aleman-Gonzalez*. In the meantime, this Court is bound by it.

invalid for reasons having nothing to do with any [covered] provision."
Answering Br. 53 (quoting *Gonzalez v. DHS*, 508 F.3d 1227, 1233 (9th
Cir. 2007)).   But that is plainly not the case here, as Judge Katsas
recognized.  Stay Op. 58 (Katsas, J., concurring in part and dissenting in
part).

At a bare minimum, the district court is plainly foreclosed by
Section 1252(f)(1) from entering relief that mandates how the
Government conducts expedited removal proceedings—which
indisputably fall within a provision subject to Section 1252(f)(1).

2.    The district court's universal vacatur fares no better.  Section
1252(f)(1) prohibits lower-court orders that "enjoin or restrain" the
Executive's operations of covered provisions on a class-wide basis, and a
universal vacatur has exactly that forbidden effect.  *See* Opening Br. 64-
65; *see Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 13 (2015).

Plaintiffs do not deny that universal vacatur is practically
indistinguishable from a class-wide injunction in its effect and they cite
no controlling precedent rejecting the Government's reading.  Answering
Br. 54-55.  It is true that *Direct Marketing* "did not involve vacatur," *id.*
at 55, but that is beside the point.  The Court recognized that vacatur

32

works to "restrict or stop official action," 575 U.S. at 13, which parallels Section 1252(f)(1)'s restrictions on lower-court class-wide relief that "enjoin[s] or restrain[s] the operation[s]" of covered provisions, 8 U.S.C. § 1252(f)(1). Plaintiffs dismiss the term "restrain" as having no independent meaning, but *Aleman-Gonzalez* separately interpreted the terms "enjoin" and "restrain"—recognizing that "restrain" has an independent and "'broad meaning' that refers to judicial orders that 'inhibit'" or "stop" or "compel" particular acts. 596 U.S. at 548-49. A universal vacatur that ultimately compels Government to comply with covered provisions falls squarely within that definition.

## CONCLUSION

The judgment of the district court should be reversed.

September 26, 2025                    Respectfully submitted,

BRIAN C. WARD                        BRETT A. SHUMATE
  *Acting Assistant Director*            *Assistant Attorney General*
PATRICK GLEN
DAVID KIM                            YAAKOV M. ROTH
KATHERINE J. SHINNERS                  *Principal Deputy Assistant*
  *Senior Litigation Counsel*           *Attorney General*
  *Office of Immigration Litigation*
  *General Litigation and Appeals*       */s/ Drew C. Ensign*
   *Section*                       DREW C. ENSIGN
                                       *Deputy Assistant Attorney*
                                       *General*

                                     BENJAMIN HAYES
                                       *Senior Counsel to the Assistant*
                                       *Attorney General*
                                       *U.S. Department of Justice,*
                                       *Civil Division*
                                       *950 Pennsylvania Avenue, NW*
                                       *Washington, DC 20530*
                                       *(202) 514-2000*
                                       *Drew.C.Ensign@usdoj.gov*

34

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6399 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.


*/s/ Drew C. Ensign*
Drew C. Ensign

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I electronically filed the foregoing reply brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*/s/ Drew C. Ensign*
Drew C. Ensign