**Oral Argument Not Yet Scheduled**
**No. 25-5243**

---

# In the United States Court of Appeals for the District of Columbia

---

Refugee and Immigrant Center for Education and Legal Services, *et al.*,

*Plaintiffs-Appellees*,

v.

Kristi Noem, Secretary of the U.S. Department of Homeland Security, in her official capacity, *et al.*,

*Defendants-Appellants*.

---

On Appeal from the United States District Court for the District of Columbia
Case No. 1:25-cv-00306 (Moss, J.)

---

**BRIEF OF *AMICUS CURIAE* IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF APPELLANTS' EMERGENCY MOTION FOR STAY**

---


CHRISTOPHER J. HAJEC
*Counsel of Record*
MATT A. CRAPO
*On the Brief*
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Ste 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and Circuit Rule 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute.

# TABLE OF CONTENTS


**Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................ iii

INTEREST OF *AMICUS CURIAE* ........................................................................1

INTRODUCTION ........................................................................................1

ARGUMENT ................................................................................................4

I. The President's Declaration that there has been an Invasion and the Measures He has Taken to Protect Against Invasion are not Justiciable Questions, and, in any Event, His Suspension of the Entry of Aliens Deemed Part of an Invasion is Lawful ........................................................4

II. The Court Lacks Jurisdiction to Review the Proclamation Under the APA .....9

CONCLUSION ...........................................................................................13

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ariz. Dream Act Coalition v. Brewer*,
855 F.3d 957 (9th Cir. 2017) ....................................................................1

*Baker v. Carr*,
369 U.S. 186 (1962)..........................................................................5, 6

*California v. United States*,
104 F.3d 1086 (9th Cir. 1997) ..................................................................6

*Chiles v. United States*,
874 F. Supp. 1334 (S.D. Fla. 1994), *aff'd* 69 F.3d 1094 (11th Cir. 1995)...........7

*Dalton v. Specter*,
511 U.S. 462 (1994).......................................................................11, 12

*Detroit Int'l Bridge Co. v. Gov't of Can.*,
189 F. Supp. 3d 85 (D.D.C. 2016).....................................................12, 13

*Franklin v. Massachusetts*,
505 U.S. 788 (1994).......................................................................11, 12

*J.G.G. v. Trump*,
2025 U.S. App. LEXIS 7131, (D.C. Cir. Mar. 26, 2025).....................................6

*Huisha-Huisha v. Mayorkas*,
27 F.4th 718 (D.C. Cir. 2022).....................................................................9

*Lichter v. United States*,
334 U. S. 742 (1948)...................................................................................8

*Lincoln v. Vigil*,
508 U.S. 182 (1993)...................................................................................9

*Louhghalam v. Trump*,
230 F. Supp. 3d 26 (D. Mass. 2017) .................................................................12

*New Jersey v. United States*,
91 F.3d 463 (3d Cir. 1996) ..................................................................................7

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892)...........................................................................................3

*Matter of Silva-Trevino*,
26 I. & N. Dec. 826 (B.I.A. 2016) ......................................................................1

*Trump v. Hawaii*,
585 U.S. 667 (2018).......................................................................1, 5, 9, 10, 11

*Tulare Cty. v. Bush*,
185 F. Supp. 2d 18 (D.D.C. 2001) ......................................................................12

*United States v. Texas*,
599 U.S. 670 (2023)...........................................................................................1

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950)........................................................................................5, 8

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
50 F.4th 164 (D.C. Cir. 2022)..............................................................................1

*Webster v. Doe*,
486 U. S. 592 (1988).........................................................................................11

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952)...........................................................................................7

**STATUTES**

5 U.S.C. § 701(a)(2).................................................................................................9

8 U.S.C. § 1158.......................................................................................................3

8 U.S.C. § 1182(a) ..................................................................................................3

8 U.S.C. § 1182(f) .......... 2, 9

## CONSTITUTION

U.S. CONST. art. II, § 1, cl. 1 .......... 7

U.S. CONST. art. IV, § 4 .......... 1, 4

## MISCELLANEOUS

9 Nicolay and Hay, Works of Abraham Lincoln (1894) .......... 8

C. Hughes, War Powers Under the Constitution (Sept. 5, 1917) .......... 8

Proclamation 10888, *Guaranteeing the States Protection Against Invasion*, 90 Fed. Reg. 8333 (Jan. 20, 2025) .......... 1, 2, 5

## INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed amicus curiae briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

## INTRODUCTION

On January 20, 2025, President Trump issued Proclamation 10888, *Guaranteeing the States Protection Against Invasion*, 90 Fed. Reg. 8333 (Jan. 20, 2025), in which he declared that "an invasion is ongoing at the southern border, which requires the Federal Government to take measures to fulfill its [constitutional] obligation" to "protect each of [the States] against Invasion." *Id.* at 8334; U.S. CONST. art. IV, § 4. In order to protect the Staes against invasion, President Trump

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

invoked his "express and inherent powers in Article II of the Constitution of the United States," including "control over foreign affairs," to suspend "the physical entry of any alien engaged in the invasion across the southern border of the United States" until the President issues "a finding that the invasion at the southern border has ceased." *Id.* at 8335-36 (Proclamation § 4).

In addition to his constitutional executive powers,[2] President Trump invoked his authority described in section 212(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(f), to suspend the entry of aliens "engaged in the invasion across the southern border." Section 1182(f), provides, in relevant part:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

The President made the determination that the entry of such aliens is detrimental to the interests of the United States. 90 Fed. Reg. at 8335 (Proclamation § 1). The

---

[2] The Proclamation further describes the President's constitutional powers as follows:

> The President's inherent powers to control the borders of the United States, including those deriving from his authority to control the foreign affairs of the United States, necessarily include the ability to prevent the physical entry of aliens involved in an invasion into the United States, and to rapidly repatriate them to an alternative location. Only through such measures can the President guarantee the right of each State to be protected against invasion.

*Id.* at 8335.

President further restricted such aliens "from invoking provisions of the INA that would permit their continued presence in the United States," including, but not limited to 8 U.S.C. § 1158. Proclamation § 2.

The District Court overlooked the President's executive powers under the Constitution and ordered Appellants to adjudicate fully any asylum and related claims raised by any alien who enters the United States in violation of the Proclamation. ECF Doc. 73 at 2 (enjoining the government "from removing any individual plaintiffs or class members without complying with the asylum statute, 8 U.S.C. § 1158(a)"). But aliens have no legitimate claim that the exercise of the President's executive powers recognized by § 1182(f) would infringe on any constitutional rights they possess. Aliens may only lawfully enter the United States with permission from the government. Under normal circumstances, Congress sets the conditions for the grant of such permission. *See* 8 U.S.C. § 1182(a) (defining classes of aliens who are inadmissible). But in § 1182(f), Congress recognized the President's power to add to those conditions by excluding certain aliens, who otherwise would meet them, when he finds their entry would be detrimental to the national interest. Aliens who are part of an invasion, as defined by the President, is one class of aliens the entry of which the President may suspend if he finds that entry detrimental to the national interest.

Any claims that this would somehow cause the government to abdicate its obligations under international law are meritless because CAT remains intact, the parole power remains intact, and individuals with genuine claims of persecution remain free to seek humanitarian protection from the government at a U.S. Embassy or Consulate in their country of citizenship.

## ARGUMENT

### I. The President's Declaration that there has been an Invasion and the Measures He has Taken to Protect Against Invasion are not Justiciable Questions, and, in any Event, His Suspension of the Entry of Aliens Deemed Part of an Invasion is Lawful.

The Constitution confers upon the federal government the primary responsibility to protect the various States from invasion. U.S. CONST. art. IV, § 4 ("The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion") ("the Invasion Clause").

The power to exclude or suspend entry of aliens into the country is an inherent executive power under the Constitution. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Ekiu v. United States*, 142 U.S. 651, 659 (1892). "The exclusion of aliens is a fundamental act of sovereignty," and "[t]he right to do so stems not

alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). *See* also *Trump v. Hawaii*, 585 U.S. 667, 712 (2018) (Thomas, J., concurring) ("[T]he President has *inherent* authority to exclude aliens from the country.") (emphasis in original) (citing *Knauff*, 338 U.S. at 542-43).

In the Proclamation, President Trump declared that there was an invasion at the southern border and invoked his inherent executive powers as well as his statutory authority under § 1182(f) to suspend the physical entry of any alien engaged in the invasion across the southern border of the United States. 90 Fed. Reg. at 8334-36. The District Court suggested that the influx of illegal immigrants does not constitute an invasion and that the President does not have the authority to invoke the Invasion Clause. ECF Doc. 71 at 89 n.14. But the President's determination that an invasion is ongoing is a political question that this Court cannot second-guess.

In *Baker v. Carr*, the Supreme Court set forth the standard for determining whether a question raises a non-justiciable political question as follows:

> It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent

> resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217 (1962).

Under this standard, as several courts of appeals have held, the question of whether an invasion has occurred within the meaning of the Invasion Clause is non-justiciable and committed to the political branches of the federal government. For example, the Ninth Circuit has held that "to determine that the United States has been 'invaded' when the political branches have made no such determination would disregard the constitutional duties that are the specific responsibility of other branches of government, and would result in the Court making an ineffective non-judicial policy decision." *California v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997). From this holding, it follows that the court may not second-guess a determination that the political branches have actually made, either, if only because a failure to make a determination that an invasion has occurred is tantamount to a determination that an invasion has not occurred. *But see J.G.G. v. Trump*, Nos. 25-5067, 25-5068, 2025 U.S. App. LEXIS 7131, at *22-24 (D.C. Cir. Mar. 26, 2025) (Henderson, J., concurring) (suggesting that nothing in *California* precludes judicial review of whether the Executive has properly invoked a wartime authority). And the Third Circuit (quoting *Baker, supra*) has held this question non-justiciable because

of "'a textually demonstrable constitutional commitment of the issue to a coordinate political department,' and 'a lack of judicially discoverable and manageable standards for resolving it.'" *New Jersey v. United States*, 91 F.3d 463, 468-470 (3d Cir. 1996). *See also Chiles v. United States*, 874 F. Supp. 1334, 1342-1344 (S.D. Fla. 1994) (finding the invasion question non-justiciable because of a lack of judicially discoverable and manageable standards for resolving it), *aff'd* 69 F.3d 1094, 1097 (11th Cir. 1995) (citing *Baker* generally). In short, the Invasion Clause in Article IV of the Constitution, because it places the responsibility to protect against invasion on the federal government, and because there are no workable judicial standards to resolve whether an invasion has occurred, commits that question to the policy making (or political) branches of the federal government, not the judicial branch.

Similarly, whatever actions constitute a permissible response to an invasion are non-justiciable and are committed by the Constitution to the political branches of the federal government. "The executive Power" of the United States is vested in the President. U.S. CONST. art. II, § 1, cl. 1. Inherent in that power is the President's "vast share of responsibility for the conduct of our foreign relations." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610-11 (1952) (Frankfurter, J., concurring). The exclusion of aliens is a fundamental act of sovereignty, and "[t]he right to do so stems not alone from legislative power but is inherent in the executive

power to control the foreign affairs of the nation." *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). "When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power." *Id.*

As the Supreme Court has recognized, "'[t]he power to wage war is the power to wage war successfully.'" *Lichter v. United States*, 334 U. S. 742, 780 (1948) (quoting address by C. Hughes, War Powers Under the Constitution (Sept. 5, 1917)). In *Lichter*, the Supreme Court quoted President Lincoln's reflection on the power of Congress to pass a Conscription Act as follows:

> The Constitution gives Congress the power [to raise and support armies], but it does not prescribe the mode, or expressly declare who shall prescribe it. In such case Congress must prescribe the mode, or relinquish the power. There is no alternative . . . . The power is given fully, completely, unconditionally. It is not a power to raise armies if State authorities consent; nor if the men to compose the armies are entirely willing; but it is a power to raise and support armies given to Congress by the Constitution, without an "if."

334 U.S. at 756 n.4 (quoting 9 Nicolay and Hay, Works of Abraham Lincoln 75-77 (1894)). Likewise, there is no "if" in the Invasion Clause pertaining to the federal government's obligation to protect the States. On the contrary, Article II, in making the President the head of the Executive Branch and the Commander in Chief, vests him with broad power over military and foreign affairs.

In sum, what constitutes an invasion under the Constitution is committed to the political branches, and (at least within broad parameters) neither this question

nor the question of which actions the government should take in response to such an invasion is amenable to judicial resolution. This Court should hold that whether an invasion is occurring and whether the President has chosen an appropriate response to such an invasion are both non-justiciable political questions, to be decided by the President.

In any event, even if the District Court had the jurisdiction to annul the President's determination that an invasion is taking place under the Invasion Clause, the President may, under his power to suspend entry, suspend the entry of any class of aliens, or all aliens, including those who are part of an invasion, however he may define "invasion," if he finds that the entry of this class would be detrimental to the national interest. 8 U.S.C. § 1182(f); *Hawaii*, 585 U.S. at 691 (setting no bounds to a President's definition of classes of aliens or determinations of the national interest). And, as Appellants demonstrate, the power to suspend the entry of aliens necessarily includes the power to expel those aliens who violate the President's Proclamation. *See* Appellants' Emergency Stay Motion at 8 (citing *Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022)).

## II. The Court Lacks Jurisdiction to Review the Proclamation Under the APA.

The Administrative Procedure Act ("APA") does not provide a private right of action here or otherwise confer jurisdiction. 5 U.S.C. § 701(a)(2); *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) ("[U]nder § 701(a)(2) agency action is not subject to

judicial review to the extent that such action is committed to agency discretion by law . . . . § 701(a)(2) makes it clear that review is not to be had in those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute (law) can be taken to have committed the decisionmaking to the agency's judgment absolutely.") (internal citations and quotation marks omitted). Here, § 1182(f) gives the President the widest discretion to suspend the entry of classes of aliens in the national interest. As the Supreme Court noted in *Trump v. Hawaii*, § 1182(f) "exudes deference to the President in every clause," and "entrusts to the President the decisions whether and when to suspend entry . . . ; whose entry to suspend . . . ; for how long . . . ; and on what conditions . . . ." 585 U.S. at 684.[3] The Court proceeded to note that:

> "Whether the President's chosen method" of addressing perceived risks is justified from a policy perspective is "irrelevant to the scope of his [§ 1182(f)] authority." *Sale*, 509 U. S., at 187-188, 113 S. Ct. 2549, 125 L. Ed. 2d 128. And when the President adopts "a preventive measure . . . in the context of international affairs and national security," he is "not required to conclusively link all of the pieces in the puzzle before [courts] grant weight to [his] empirical conclusions." *Holder v. Humanitarian Law Project*, 561 U. S. 1, 35, 130 S. Ct. 2705, 177 L. Ed. 2d 355 (2010).

[3] The Court in *Hawaii* recognized the question of whether an alien who has no right to enter the United States may obtain judicial review of an exclusion decision may not be justiciable, but assumed without deciding that plaintiffs' statutory claims were reviewable in that case. *Id.* at 682-83.

585 U.S. at 686-87; *see also Webster v. Doe*, 486 U. S. 592, 600 (1988) (judicial "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"). Because § 1182(f) does not provide judicially enforceable standards to restrict the President's discretion, it is not reviewable under the APA.

Furthermore, the Proclamation is unreviewable under the APA because it is the action of the President. *Dalton v. Specter*, 511 U.S. 462, 468-77 (1994) (holding that decisions of the President's subordinates about military base closings were not reviewable under the APA because the statute in that case conferred decision-making authority on the President, and, since the President is not an agency, the APA does not apply to actions of the President) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 796-801 (1994)).

It does not matter that the Proclamation has been implemented by the Attorney General and the Departments of State and Homeland Security. Presidents must always act through subordinates, and whether an action is that of the President or an agency, for purposes of APA reviewability, hinges not on whether agencies help perform a given action, but on whether Congress has granted authority to take that action to the President or to an agency. *See Dalton*, 511 U.S. at 477 ("Where a statute … commits decisionmaking to the discretion of the President, judicial review of the President's decision is not available."). Here, Congress has recognized the

President's inherent authority to exclude aliens through the issuance of the Proclamation; the Attorney General and the Departments of State and Homeland Security have merely carried the Proclamation out on his behalf. As the district court in *Detroit International Bridge Company v. Government of Canada* has explained:

> [A]n unreviewable presidential action must involve the exercise of discretionary authority vested in the President; an agency acting on behalf of the President is not sufficient by itself. Since the Constitution vests the powers of the Executive Branch in one unitary chief executive officer, *i.e.*, the President, an agency always acts on behalf of the President. Nonetheless, there is a difference between actions involving discretionary authority delegated by Congress to the President and actions involving authority delegated by Congress to an agency. Courts lack jurisdiction to review an APA challenge in the former circumstances, regardless of whether the President or the agency takes the final action. However, "[w]hen the challenge is to an action delegated to an agency head but directed by the President, a different situation obtains: then, the President effectively has stepped into the shoes of an agency head, and the review provisions usually applicable to that agency's action should govern." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2351 (2001).

*Detroit Int'l Bridge Co. v. Gov't of Can.*, 189 F. Supp. 3d 85, 104 (D.D.C. 2016). *See also*, *e.g.*, *Tulare Cty. v. Bush*, 185 F. Supp. 2d 18, 28 (D.D.C. 2001) ("A court has subject-matter jurisdiction to review an agency action under the APA only when a final agency action exists. Because the President is not a federal agency within the meaning of the APA, presidential actions are not subject to review pursuant to the APA.") (citing *Dalton*, 511 U.S. at 470) (other internal citations omitted); *Louhghalam v. Trump*, 230 F. Supp. 3d 26, 36 (D. Mass. 2017) ("[T]he Presidency is not an 'agency' as defined in the APA, § 701(b)(1), and thus actions by the

President are not subject to the APA…. Here, Congress has granted the President authority to suspend entry for any class of aliens if such entry would be 'detrimental to the interests of the United States.' 8 U.S.C. 1182(f). Pursuant to, and without exceeding, that grant of discretionary authority, the President issued EO 13,769 and suspended entry of aliens from the seven subject countries. The President's action is thus unreviewable under the APA.") (citing *Franklin*, 505 U.S. at 800-01 and *Detroit Int'l Bridge*, 189 F. Supp. 3d at 104-05).

## CONCLUSION

For the foregoing reasons, the Court should grant Appellants' motion for a stay pending appeal.

Date: July 9, 2025

Respectfully submitted,

/s/ Christopher J. Hajec

CHRISTOPHER J. HAJEC
D.C. Bar No. 492551
*Counsel of Record*
MATT A. CRAPO
D.C. Bar No. 473355
*On the Brief*
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Ste 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mcrapo@irli.org

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 27(d)(2) because it contains 3,362 words, as measured by Microsoft Word software. The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

Date: July 9, 2025

Respectfully submitted,

/s/ Christopher J. Hajec

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July 2025, I electronically filed the foregoing *amicus* brief with the Clerk of the Court using the CM/ECF system, which I understand to have caused service of the parties' counsel.

s/ Christopher Hajec