No. 25-5243

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

REFUGEE AND IMMIGRANT CENTER
FOR EDUCATION AND LEGAL SERVICES, *et al.*,
*Appellees*,

v.

KRISTI NOEM, *et al.*,
*Appellants*.

On Appeal from the U.S. District Court
for the District of Columbia
No. 1:25-cv-00306 (Moss, J.)

## APPELLANTS' REPLY IN SUPPORT OF EMERGENCY
## MOTION FOR A STAY PENDING APPEAL
(Relief requested by July 11, 2025)

BRIAN C. WARD
*Acting Assistant Director*
KATHERINE J. SHINNERS
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

BRETT A. SHUMATE
*Assistant Attorney General*
YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*
DREW C. ENSIGN
*Deputy Assistant Attorney General*
BENJAMIN HAYES
*Special Counsel to the Assistant Attorney General*
U.S. Department of Justice,
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

ARGUMENT .......................................................................................................2

    I.      The Proclamation is a Lawful Exercise of the President's Authority.......2

    II.     The District Court's Global Class Violates Rule 23 and the INA............7

    III.    The Equitable Factors Overwhelmingly Favor a Stay. ...........................9

CONCLUSION..................................................................................................10

CERTIFICATE OF COMPLIANCE....................................................................12

CERTIFICATE OF SERVICE ............................................................................13

**INTRODUCTION**

The district court's global injunction is poised to derail the most effective tool for stopping the flood of illegal mass migration and the resulting crises at the southern border. And it does so based on a stingy reading of the President's authority that flouts this Court's precedent, coupled with the unsustainable certification of a universal class. This Court should stay that injunction pending appeal.

The President's power to suspend the entry of aliens and direct the expulsion of those who violate that suspension follows directly from 8 U.S.C. §§1182(f), 1185(a), and this Court's holding in *Huisha-Huisha v. Mayorkas*, 27 F.4th 718 (D.C. Cir. 2022). Plaintiffs offer no cogent reason for departing from these authorities; they instead resort to meaningless distinctions between this case and *Huisha-Huisha*, and embrace legal arguments that would afford *greater* protections to aliens who *violate* the immigration laws while forcing the Government to expend substantial resources providing pointless procedures solely for procedures' sake. And to make matters worse, the Court imposed its misguided legal views on the entire globe by certifying a universal class full of absent class members who cannot satisfy the requirements of Article III or Rule 23.

If not stayed, the district court's injunction risks triggering a new wave of illegal mass migration and the violence, trafficking, drugs, and human suffering that follow. Those harms are not speculative or theoretical: the Government has substantiated them with detailed declarations, including from two cabinet-level officials, while Plaintiffs have offered zero to support their counterintuitive contrary assurances.

1

## ARGUMENT

**I. The Proclamation is a Lawful Exercise of the President's Authority.**

**A.** Section 1182(f) supplements the President's Article II authority by authorizing him to suspend the entry of aliens he deems "detrimental to the interests of the United States," which necessarily includes the power to expel those who enter the United States in defiance of that entry bar. That authority follows from the statute's text, common sense, and this Court's decision in *Huisha-Huisha*. Mot.7-9. And because the Proclamation is lawful, the guidance issued by the Department of Homeland Security to implement the Proclamation is lawful, too.[1]

Plaintiffs contend that §1182(f) only allows the suspension of entry, but does not authorize the President to expel aliens who enter the United States in violation of such an entry barrier. Opp.7-11. That argument flouts *Huisha-Huisha*'s holding that the authority in 42 U.S.C. §265 to bar the "introduction" of aliens into the United States included the power to *expel* aliens who violate the entry bar. That same logic extends to §1182(f). Mot.8-9. Plaintiffs argue that *Huisha-Huisha* is different because it involved "a public health statute [that] aims to prevent the spread of grave diseases" and was based on "the specific features of Section 265." Opp.9. That rewrites *Huisha-Huisha*:

---

[1] Plaintiffs are wrong to argue that the Government "does not contest the decision to vacate the Guidance." Opp.19-20. The Government has argued that the district court erred in holding that the Proclamation and implementing guidance are unlawful. They rise and fall together, and Plaintiffs scarcely contend otherwise.

2

This Court did not base its holding on the "specific features" of the public health statute, *id.*, but on the common-sense principle that the power to exclude is rendered "nugatory if the Executive could not take any action against a[n otherwise] covered alien who disregarded the prohibition and managed to set foot on U.S. soil." 27 F.4th at 279. That same principle is equally applicable here, and it is dispositive. Mot.8. In any event, to the extent Plaintiffs' argument is that *Huisha-Huisha*'s holding was dependent on the existence of "the COVID-19 emergency," Opp.9, the Proclamation was issued in response to the once-in-a-generation crisis at the southern border. Mot.3-4.

Plaintiffs also insist this case is unlike *Huisha-Huisha* because §1182(f)'s entry bar would supposedly not be rendered "nugatory" given that expulsion can still be pursued through the INA's ordinary removal provisions. Opp.8-9. But that was equally true in *Huisha-Huisha*. Aliens who entered in violation of the Title 42 order could have been removed under the ordinary INA procedures, but this Court held that a special power to prohibit entry entailed a special power to enforce its terms through expeditious expulsion of violators. So too here. Plaintiffs' contrary argument ignores that §1182(f)'s entire purpose is to empower the President to *go beyond* the INA's existing provisions. *See Trump v. Hawaii*, 585 U.S. 667, 691 (2018). By giving the President that greater power to deny entry, Congress necessarily conferred a proportionately greater power to *enforce* that entry bar. Mot.8, 11. That is the lesson of *Huisha-Huisha* and *Sale v. Haitian Centers Council, Inc.*, 509 U.S. 115 (1993).

3

Plaintiffs say *Sale* is different because it involved front-end measures to prevent entry, Opp.8, but the key point is that *Sale* recognized the President's authority under §1182(f) to take affirmative steps to ensure that a suspension on entry is effective. Mot.9. That includes back-end measures to enforce it. And accepting that common-sense proposition does not render the INA's ordinary removal provisions without purpose—it simply "giv[es] effect" to *all* of the statutory provisions. *USDA v. Kirtz*, 601 U.S. 42, 63 (2024). Indeed, Plaintiffs have no response to the Government's point that the INA's removal provisions remain operative in many cases. Mot.11-12.[2]

**B.** Reading §1182(f) to authorize removal and repatriation is in harmony with the INA's asylum and withholding provisions. Mot.12-14. As the Government has explained, asylum is a matter of Executive discretion, and the Proclamation's directive that those who violate its entry bar may not seek asylum is an exercise of that discretion. Mot.12 (citing *Huisha-Huisha*, 27 F.4th at 731). Plaintiffs do not dispute that asylum is discretionary; they do not even dispute that the President can deny asylum *in advance* as to any alien whose entry he deems "detrimental to the interests of the United States." Opp.12-13. Nonetheless, they insist that the Executive remains compelled to provide every such alien "the opportunity to apply for asylum" and receive a hearing—even

---

[2] Plaintiffs' suggestion that the Executive has consistently adopted a narrower reading of 8 U.S.C. §1182(f) ignores that the Biden Administration invoked §1182(f) to suspend the entry of aliens and enable prohibitions on aliens obtaining access to the asylum system. *See* Gunduz Decl. ¶¶22-28.

4

though the outcome of those proceedings is preordained. Opp.12. *Huisha-Huisha* rejected that very argument too: "If the asylum decision has already been made," recourse to "those procedures would be futile." 27 F.4th at 731.

Plaintiffs contend that *Huisha-Huisha*'s holding was dependent on the need for the "*speedy* removal of noncitizens who c[an] imminently transmit disease." Opp.13. Even if that were the Court's reasoning, it applies here: If the President has determined that entry of a class of aliens would be "detrimental to the interests of the United States," 8 U.S.C. §1182(f), there is an equally strong interested in their "speedy" expulsion. But, in fact, *Huisha-Huisha* did not rest on the need for "speedy" removal. It held that when the ultimate decision on asylum has been made, any resort to asylum procedures is "futile." 27 F.4th at 731. So too here. That sensible reading does not "make[] a mockery of the entire [asylum] scheme," Opp.12—*Plaintiffs*' reading does, by forcing the Executive to expend enormous time and resources affording proceedings whose outcomes are predetermined. And even if Plaintiffs were correct on the law, a court sitting in equity should not exercise its discretion to upend the Government's efforts to secure the border in the name of providing asylees access to ultimately pointless procedures. Inflicting a renewed border crisis upon the United States purely to preserve the flow of futile asylum applications is not remotely equitable.

Nor does the Government's reading of §1182(f) conflict with any other provision of the INA. Plaintiffs insist that interpreting §1182(f) in line with *Huisha-Huisha* would "erase" the INA's provision authorizing the Executive to issue regulations modifying

5

the eligibility criteria for asylum.  *Cf.* Opp.12.  False.  As the Government has explained, that provision authorizes the Executive to adjust by regulation who is *eligible* to apply for asylum, but the Executive always retains the discretion to *deny* asylum even to eligible applicants.  Mot.12.  Plaintiffs offer no response.[3]

For all these reasons, the Proclamation and implementing guidance are a lawful exercise of the President's authority under §1182(f) and §1185(a) to suspend the entry of aliens and expel those who violate the entry bar.  That reading harmonizes the various provisions of the INA and adheres to this Court's precedent.  Plaintiffs' interpretation, by contrast, relegates §1182(f) to the mere "residual authority" that the Supreme Court said it is not, *see Hawaii*, 585 U.S. at 691, ignores *Huisha-Huisha*, and leads to the perverse result that aliens who seek to present at a port of entry—the legal way—could be *worse off* than those violate the laws of this Nation and enter the United States in violation of *two* separate bars on entry.  Mot.13.  Nothing in the asylum statutes compels that backward result, and this Court should not embrace an interpretation of the immigration laws that incentivizes aliens to violate them.

---

[3] The Government's construction of §1182(f) does not conflict with the withholding statute either.  Opp.14.  The President's authority under §1182(f) and §1185(a) to suspend and impose "reasonable" restrictions on entry include authority to deny access to withholding.  Mot.13-14.  But, in any event, Plaintiffs do not dispute that a ruling in their favor on the withholding issue cannot justify the district court's much broader injunction, which also compels continued access to asylum procedures.

## II. The District Court's Global Class Violates Rule 23 and the INA.

The Government is independently likely to succeed on the merits because the district court's global, class-wide injunction violates Rule 23 and the INA. Mot.14-18.

**A.** The district court's global class of any aliens "who are now *or will be*" subject to the Proclamation and present in the United States far exceeds the bounds of Rule 23 and Article III standing. Mot.14-17. Plaintiffs argue that this Court has "routinely approved classes that include 'future claimants,'" Opp.15, but the decisions they cite predate the Supreme Court's more recent decisions making clear that Article III fully applies in the class context. Mot.15 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)). Moreover, even if the inclusion of future plaintiffs in a class were generally consistent with Article III, that does not mean that literally *any* possible plaintiff may be included, no matter how remote or speculative or attenuated their injury may be. The injury must still be "imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs say that is true of absent class members because "[e]very person included [in the class] either has or *will* suffer an injury." Opp.15. But that could be tomorrow or years from now. The latter cannot possibly have Article III standing to sue on their own, and therefore they cannot be members of the class.

The class also fails to satisfy the requirements of Rule 23. Mot.16-17. Plaintiffs say Rule 23(a)'s requirements of commonality and typicality are met because "all named class representatives face" the "common injury" of "non-statutory repatriation or removal proceedings without the protections embodied in" federal law. Opp.16. This

7

is no different than saying that class members face the same injury because "they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The "injury" suffered by someone who is *ineligible* for asylum, for example, cannot be said to be the same as that of someone who *is* eligible. The former lost nothing; the latter lost a potentially viable asylum claim. Those injuries are anything but "the same." And those divergences confirm that certification under Rule 23(b)(2) was inappropriate. *See* Mot.16-17.

**B.** At a minimum, the district court's class certification order was barred by 8 U.S.C. §1252(f)(1). Mot.17-18. Plaintiffs say that §1252(f)(1) does not apply because the district court's injunction runs against the Proclamation and its use of §1182(f), not any provision subject to §1252(f)(1). Opp.18. But §1252(f)(1) applies to prevent "lower courts from entering injunctions that order federal officials *to take* or to refrain from taking actions to *enforce, implement, or otherwise carry out* the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) (emphases added). The district court's injunction plainly requires the Government to "carry out" portions of the expedited removal statute. Mot.18. Plaintiffs appear to acknowledge this, but say the injunction is still permissible because those effects are merely "collateral" to the enjoining of the Proclamation. Opp.19. Hardly. The Proclamation prevents aliens from pursuing relief under the asylum statute, 8 U.S.C. §1158(a), and the asylum statute is inextricably intertwined with the expedited removal statute. *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1046-47 (S.D. Cal. 2022).

**III. The Equitable Factors Overwhelmingly Favor a Stay.**

The equities decisively favor a stay. As the Government has substantiated with declarations from the Secretary of Homeland Security and the Acting Deputy Assistant Secretary for Border Policy—on top of a declaration below from the Director of National Intelligence—the Proclamation is an "extremely effective" and "indispensable tool" for managing the crisis at the southern border. Noem Decl. ¶¶7, 11; Gunduz Decl. ¶¶42-43 (describing Proclamation as the "most effective tool" for managing border crisis); *see* Mot.19-20. By ending the perverse incentives that led millions of illegal aliens to assert baseless asylum claims to gain entry to the United States, the Proclamation simultaneously freed-up critical law enforcement resources to combat the cartels and transnational criminal organizations that have exploited the border crisis for years. Mot.19; *accord* Doc. 44-6 (DNI describing threats posed by border crisis).

Plaintiffs have not submitted a shred of contrary evidence. And the unsupported attorney argument they do offer come nowhere close to tilting the equities in their favor. They assert the Government's concerns are "vastly overstated" because "the decision below is tailored to people on U.S. soil." Opp.20. No—it applies to all persons "who are now *or will be* present in the United States." Doc. 71 at 104 (emphasis added). As the Government's uncontroverted declarants confirm, enjoining the Proclamation will incentivize yet another "surge of aliens seeking to cross" illegally into the United States, Gunduz Decl. ¶43, and those aliens will then "be present in the United States" and covered by the global class-wide injunction. Doc. 71 at 104.

9

Nor is the risk of another wave of mass illegal migration and the resulting "insufficient detention capacity" cured by the recent appropriations for border security. Opp.20. Those funds are meant to deal with the millions of aliens *already* in the United States illegally as a direct consequence of the misguided border policies that Plaintiffs now wish to reimpose on America. *See* Noem Decl. ¶10. Besides, any additional capacity could not possibly materialize by July 16, when the district court's injunction is set to go into effect—or for some time thereafter.

With no contrary evidence, Plaintiffs accuse the Government of scapegoating asylees for "committing crimes or acts of terrorism." Opp.20. But the Government's declarations make clear that mass illegal migration at the southern border has historically forced the Government to divert critical resources away from combatting cartels and other criminal organizations who exploit the border crises. Mot.19-20. Plaintiffs do not dispute that reality, nor (again) have they offered any evidence to rebut the declarations attesting that the same pattern will repeat if the court's injunction goes into effect. Mot.19-20. The public interest is not served by dismantling hard-fought border security for the sake of those who have entered this country unlawfully.

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

| | |
|---|---|
| BRIAN C. WARD<br>*Acting Assistant Director*<br>KATHERINE J. SHINNERS<br>*Senior Litigation Counsel*<br>U.S. Department of Justice, Civil Division<br>Office of Immigration Litigation<br>P.O. Box 868 Ben Franklin Station<br>Washington, DC 20044<br>(202) 598-7537 | BRETT A. SHUMATE<br>*Assistant Attorney General*<br>YAAKOV M. ROTH<br>*Principal Deputy Assistant Attorney General*<br>/s/ *Drew C. Ensign*<br>DREW C. ENSIGN<br>*Deputy Assistant Attorney General*<br>BENJAMIN HAYES<br>*Senior Counsel to the Assistant Attorney General*<br>U.S. Department of Justice, Civil Division<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>*Drew.C.Ensign@usdoj.gov*<br>(202) 514-2000 |

Dated: July 10, 2025

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,588 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 365 in proportionally spaced 14-point Garamond type.

*/s/Drew C. Ensign*
Drew C. Ensign

Dated:  July 10, 2025                    Attorney for Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Drew C. Ensign*
Drew C. Ensign

Dated: July 10, 2025                Attorney for Appellants