**ORAL ARGUMENT NOT SCHEDULED**
**No. 25-5243**

***

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, et al.,

Plaintiffs-Appellants,

v.

KRISTI NOEM, et al.,

Defendants-Appellees.

———————

On Appeal from the United States District Court
for the District of Columbia

———————

**ADDENDUM OF STATUTES AND REGULATIONS**

———————

BRIAN C. WARD
  *Acting Assistant Director*
PATRICK GLEN
DAVID KIM
KATHERINE J. SHINNERS
  *Senior Litigation Counsel*
  *Office of Immigration Litigation*
  *General Litigation and Appeals*
    *Section*

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant*
*Attorney General*

DREW C. ENSIGN
  *Deputy Assistant Attorney*
  *General*

BENJAMIN HAYES
  *Special Counsel to the*
    *Assistant Attorney General*

# <u>TABLE OF CONTENTS</u>

8 U.S.C. § 1158 ................................................................... Add001

8 U.S.C. § 1182(a)(1)–(3) .............................................. Add011

8 U.S.C. § 1182(f) ............................................................ Add026

8 U.S.C. § 1185 ................................................................ Add028

8 U.S.C. § 1225 ................................................................ Add030

8 U.S.C. § 1229a .............................................................. Add040

8 U.S.C. § 1231 ................................................................ Add052

8 U.S.C. § 1252(f) ............................................................ Add072

Federal Rule of Civil Procedure 23 ............................... Add073

8 C.F.R. § 208.30 ............................................................. Add076

Proclamation No. 10888 of January 20, 2025, 90 Fed. Reg. 8333. Add096

# 8 U.S.C. § 1158. Asylum

## (a) Authority to apply for asylum

(1) In general
Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title.

(2) Exceptions

(A) Safe third country
Paragraph (1) shall not apply to an alien if the Attorney General determines that the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.

(B) Time limit
Subject to subparagraph (D), paragraph (1) shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States.

(C) Previous asylum applications
Subject to subparagraph (D), paragraph (1) shall not apply to an alien if the alien has previously applied for asylum and had such application denied.

(D) Changed circumstances
An application for asylum of an alien may be considered, notwithstanding subparagraphs (B) and (C), if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified in subparagraph (B).

(E) Applicability
Subparagraphs (A) and (B) shall not apply to an unaccompanied alien child (as defined in section 279(g) of title 6).

(3) Limitation on judicial review
No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).

**(b) Conditions for granting asylum**

(1) In general

(A) Eligibility
The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

(B) Burden of proof

(i) In general

The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 1101(a)(42)(A) of this title. To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.

(ii) Sustaining burden

The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

(iii) Credibility determination

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in

such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

(2) Exceptions

(A) In general
Paragraph (1) shall not apply to an alien if the Attorney General determines that-

(i) the alien ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion;

(ii) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States;

(iii) there are serious reasons for believing that the alien has committed a serious nonpolitical crime outside the United States prior to the arrival of the alien in the United States;

(iv) there are reasonable grounds for regarding the alien as a danger to the security of the United States;

(v) the alien is described in subclause (I), (II), (III), (IV), or (VI) of section 1182(a)(3)(B)(i) of this title or section 1227(a)(4)(B) of this title (relating to terrorist activity), unless, in the case only of an alien described in subclause (IV) of section 1182(a)(3)(B)(i) of this title, the Attorney General determines, in the Attorney General's discretion, that there are not reasonable grounds for regarding the alien as a danger to the security of the United States; or

(vi) the alien was firmly resettled in another country prior to arriving in the United States.

(B) Special rules
(i) Conviction of aggravated felony
For purposes of clause (ii) of subparagraph (A), an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime.

(ii) Offenses
The Attorney General may designate by regulation offenses that will be considered to be a crime described in clause (ii) or (iii) of subparagraph (A).

(C) Additional limitations
The Attorney General may by regulation establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum under paragraph (1).

(D) No judicial review
There shall be no judicial review of a determination of the Attorney General under subparagraph (A)(v).

(3) Treatment of spouse and children

(A) In general
A spouse or child (as defined in section 1101(b)(1)(A), (B), (C), (D), or (E) of this title) of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien.

(B) Continued classification of certain aliens as children
An unmarried alien who seeks to accompany, or follow to join, a parent granted asylum under this subsection, and

who was under 21 years of age on the date on which such parent applied for asylum under this section, shall continue to be classified as a child for purposes of this paragraph and section 1159(b)(3) of this title, if the alien attained 21 years of age after such application was filed but while it was pending.

(C) Initial jurisdiction
An asylum officer (as defined in section 1225(b)(1)(E) of this title) shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child (as defined in section 279(g) of title 6), regardless of whether filed in accordance with this section or section 1225(b) of this title.

## (c) Asylum status

(1) In general
In the case of an alien granted asylum under subsection (b), the Attorney General-

(A) shall not remove or return the alien to the alien's country of nationality or, in the case of a person having no nationality, the country of the alien's last habitual residence;

(B) shall authorize the alien to engage in employment in the United States and provide the alien with appropriate endorsement of that authorization; and

(C) may allow the alien to travel abroad with the prior consent of the Attorney General.

(2) Termination of asylum
Asylum granted under subsection (b) does not convey a right to remain permanently in the United States, and may be terminated if the Attorney General determines that-

(A) the alien no longer meets the conditions described in subsection (b)(1) owing to a fundamental change in circumstances;

(B) the alien meets a condition described in subsection (b)(2);

(C) the alien may be removed, pursuant to a bilateral or multilateral agreement, to a country (other than the country of the alien's nationality or, in the case of an alien having no nationality, the country of the alien's last habitual residence) in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien is eligible to receive asylum or equivalent temporary protection;

(D) the alien has voluntarily availed himself or herself of the protection of the alien's country of nationality or, in the case of an alien having no nationality, the alien's country of last habitual residence, by returning to such country with permanent resident status or the reasonable possibility of obtaining such status with the same rights and obligations pertaining to other permanent residents of that country; or

(E) the alien has acquired a new nationality and enjoys the protection of the country of his or her new nationality.

(3) Removal when asylum is terminated
An alien described in paragraph (2) is subject to any applicable grounds of inadmissibility or deportability under section 1 1182(a) and 1227(a) of this title, and the alien's removal or return shall be directed by the Attorney General in accordance with sections 1229a and 1231 of this title.

**(d) Asylum procedure**

(1) Applications
The Attorney General shall establish a procedure for the consideration of asylum applications filed under subsection (a). The Attorney General may require applicants to submit fingerprints and a photograph at such time and in such manner to be determined by regulation by the Attorney General.

(2) Employment
An applicant for asylum is not entitled to employment authorization, but such authorization may be provided under regulation by the Attorney General. An applicant who is not otherwise eligible for employment authorization shall not be granted such authorization prior to 180 days after the date of filing of the application for asylum.

(3) Fees
The Attorney General shall impose fees for the consideration of an application for asylum, for employment authorization under this section, and for adjustment of status under section 1159(b) of this title. Nothing in this paragraph may be construed to limit the authority of the Attorney General to set additional adjudication and naturalization fees in accordance with section 1356(m) of this title.

(4) Notice of privilege of counsel and consequences of frivolous application
At the time of filing an application for asylum, the Attorney General shall-

> (A) advise the alien of the privilege of being represented by counsel and of the consequences, under paragraph (6), of knowingly filing a frivolous application for asylum; and

> (B) provide the alien a list of persons (updated not less often than quarterly) who have indicated their availability to represent aliens in asylum proceedings on a pro bono basis.

(5) Consideration of asylum applications

(A) Procedures
The procedure established under paragraph (1) shall provide that-

(i) asylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State, including the Automated Visa Lookout System, to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum;

(ii) in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed;

(iii) in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed;

(iv) any administrative appeal shall be filed within 30 days of a decision granting or denying asylum, or within 30 days of the completion of removal proceedings before an immigration judge under section 1229a of this title, whichever is later; and

(v) in the case of an applicant for asylum who fails without prior authorization or in the absence of exceptional circumstances to appear for an interview or hearing, including a hearing under section 1229a of this title, the application may be dismissed or the applicant may be otherwise sanctioned for such failure.

(B) Additional regulatory conditions
The Attorney General may provide by regulation for any other conditions or limitations on the consideration of an application for asylum not inconsistent with this chapter.

(6) Frivolous applications
If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application.

(7) No private right of action
Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

## (e) Commonwealth of the Northern Mariana Islands

The provisions of this section and section 1159(b) of this title shall apply to persons physically present in the Commonwealth of the Northern Mariana Islands or arriving in the Commonwealth (whether or not at a designated port of arrival and including persons who are brought to the Commonwealth after having been interdicted in international or United States waters) only on or after January 1, 2014.

## Excerpts of 8 U.S.C. § 1182. Inadmissible aliens

## (a) Classes of aliens ineligible for visas or admission

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

(1) Health-related grounds

(A) In general
Any alien-

(i) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to have a communicable disease of public health significance;[1]

(ii) except as provided in subparagraph (C), who seeks admission as an immigrant, or who seeks adjustment of status to the status of an alien lawfully admitted for permanent residence, and who has failed to present documentation of having received vaccination against vaccine-preventable diseases, which shall include at least the following diseases: mumps, measles, rubella, polio, tetanus and diphtheria toxoids, pertussis, influenza type B and hepatitis B, and any other vaccinations against vaccine-preventable diseases recommended by the Advisory Committee for Immunization Practices,

(iii) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services in consultation with the Attorney General)-

(I) to have a physical or mental disorder and behavior associated with the disorder that may pose, or has posed, a threat to the property, safety, or welfare of the alien or others, or

---

[1] So in original. The semicolon probably should be a comma.

(II) to have had a physical or mental disorder and a history of behavior associated with the disorder, which behavior has posed a threat to the property, safety, or welfare of the alien or others and which behavior is likely to recur or to lead to other harmful behavior, or

(iv) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to be a drug abuser or addict,

is inadmissible.

(B) Waiver authorized
For provision authorizing waiver of certain clauses of subparagraph (A), see subsection (g).

(C) Exception from immunization requirement for adopted children 10 years of age or younger
Clause (ii) of subparagraph (A) shall not apply to a child who-

(i) is 10 years of age or younger,

(ii) is described in subparagraph (F) or (G) of section 1101(b)(1) of this title; 1 and

(iii) is seeking an immigrant visa as an immediate relative under section 1151(b) of this title,

if, prior to the admission of the child, an adoptive parent or prospective adoptive parent of the child, who has sponsored the child for admission as an immediate relative, has executed an affidavit stating that the parent is aware of the provisions of subparagraph (A)(ii) and will ensure that, within 30 days of the child's admission, or at the earliest time that is medically appropriate, the child will receive the vaccinations identified in such subparagraph.

(2) Criminal and related grounds

(A) Conviction of certain crimes

(i) In general
Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of-

(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or

(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21),

 is inadmissible.

(ii) Exception
Clause (i)(I) shall not apply to an alien who committed only one crime if-

(I) the crime was committed when the alien was under 18 years of age, and the crime was committed (and the alien released from any confinement to a prison or correctional institution imposed for the crime) more than 5 years before the date of application for a visa or other documentation and the date of application for admission to the United States, or

(II) the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of

imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

(B) Multiple criminal convictions
Any alien convicted of 2 or more offenses (other than purely political offenses), regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years or more is inadmissible.

(C) Controlled substance traffickers
Any alien who the consular officer or the Attorney General knows or has reason to believe-

(i) is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 802 of title 21), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so; or

(ii) is the spouse, son, or daughter of an alien inadmissible under clause (i), has, within the previous 5 years, obtained any financial or other benefit from the illicit activity of that alien, and knew or reasonably should have known that the financial or other benefit was the product of such illicit activity,

is inadmissible.

(D) Prostitution and commercialized vice
Any alien who-

(i) is coming to the United States solely, principally, or incidentally to engage in prostitution, or has engaged in prostitution within 10 years of the date of application for a visa, admission, or adjustment of status,

(ii) directly or indirectly procures or attempts to procure, or (within 10 years of the date of application for a visa, admission, or adjustment of status) procured or attempted to procure or to import, prostitutes or persons for the purpose of prostitution, or receives or (within such 10-year period) received, in whole or in part, the proceeds of prostitution, or

(iii) is coming to the United States to engage in any other unlawful commercialized vice, whether or not related to prostitution,

is inadmissible.

(E) Certain aliens involved in serious criminal activity who have asserted immunity from prosecution
Any alien-

(i) who has committed in the United States at any time a serious criminal offense (as defined in section 1101(h) of this title),

(ii) for whom immunity from criminal jurisdiction was exercised with respect to that offense,

(iii) who as a consequence of the offense and exercise of immunity has departed from the United States, and

(iv) who has not subsequently submitted fully to the jurisdiction of the court in the United States having jurisdiction with respect to that offense,

is inadmissible.

(F) Waiver authorized
For provision authorizing waiver of certain subparagraphs of this paragraph, see subsection (h).

(G) Foreign government officials who have committed particularly severe violations of religious freedom
Any alien who, while serving as a foreign government official, was responsible for or directly carried out, at any time, particularly severe violations of religious freedom, as defined in section 6402 of title 22, is inadmissible.

(H) Significant traffickers in persons
(i) In general
Any alien who commits or conspires to commit human trafficking offenses in the United States or outside the United States, or who the consular officer, the Secretary of Homeland Security, the Secretary of State, or the Attorney General knows or has reason to believe is or has been a knowing aider, abettor, assister, conspirator, or colluder with such a trafficker in severe forms of trafficking in persons, as defined in the section 7102 of title 22, is inadmissible.

(ii) Beneficiaries of trafficking
Except as provided in clause (iii), any alien who the consular officer or the Attorney General knows or has reason to believe is the spouse, son, or daughter of an alien inadmissible under clause (i), has, within the previous 5 years, obtained any financial or other benefit from the illicit activity of that alien, and knew or reasonably should have known that the financial or other benefit was the product of such illicit activity, is inadmissible.

(iii) Exception for certain sons and daughters
Clause (ii) shall not apply to a son or daughter who was a child at the time he or she received the benefit described in such clause.

(I) Money laundering
Any alien-

(i) who a consular officer or the Attorney General knows, or has reason to believe, has engaged, is engaging, or seeks to enter the United States to engage, in an offense which is described in section 1956 or 1957 of title 18 (relating to laundering of monetary instruments); or

(ii) who a consular officer or the Attorney General knows is, or has been, a knowing aider, abettor, assister, conspirator, or colluder with others in an offense which is described in such section;

is inadmissible.

(3) Security and related grounds

(A) In general
Any alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in-

(i) any activity (I) to violate any law of the United States relating to espionage or sabotage or (II) to violate or evade any law prohibiting the export from the United States of goods, technology, or sensitive information,

(ii) any other unlawful activity, or

(iii) any activity a purpose of which is the opposition to, or the control or overthrow of, the Government of the United States by force, violence, or other unlawful means,

is inadmissible.

(B) Terrorist activities

(i) In general
Any alien who-

(I) has engaged in a terrorist activity;

(II) a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity (as defined in clause (iv));

(III) has, under circumstances indicating an intention to cause death or serious bodily harm, incited terrorist activity;

(IV) is a representative (as defined in clause (v)) of-

(aa) a terrorist organization (as defined in clause (vi)); or

(bb) a political, social, or other group that endorses or espouses terrorist activity;

(V) is a member of a terrorist organization described in subclause (I) or (II) of clause (vi);

(VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;

(VII) endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;

(VIII) has received military-type training (as defined in section 2339D(c)(1) of title 18) from or on behalf of any organization that, at the time the training was received, was a terrorist organization (as defined in clause (vi)); or

(IX) is the spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years,

is inadmissible. An alien who is an officer, official, representative, or spokesman of the Palestine Liberation Organization is considered, for purposes of this chapter, to be engaged in a terrorist activity.

(ii) Exception
Subclause (IX) of clause (i) does not apply to a spouse or child-

(I) who did not know or should not reasonably have known of the activity causing the alien to be found inadmissible under this section; or

(II) whom the consular officer or Attorney General has reasonable grounds to believe has renounced the activity causing the alien to be found inadmissible under this section.

(iii) "Terrorist activity" defined
As used in this chapter, the term "terrorist activity" means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following:

(I) The highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

(II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

(III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18) or upon the liberty of such a person.

(IV) An assassination.

(V) The use of any-

(a) biological agent, chemical agent, or nuclear weapon or device, or

(b) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain),

with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

(iv) "Engage in terrorist activity" defined
As used in this chapter, the term "engage in terrorist activity" means, in an individual capacity or as a member of an organization-

(I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;

(II) to prepare or plan a terrorist activity;

(III) to gather information on potential targets for terrorist activity;

(IV) to solicit funds or other things of value for-

(aa) a terrorist activity;

(bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or

(cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization;

(V) to solicit any individual-

(aa) to engage in conduct otherwise described in this subsection;

(bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or

(cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; or

(VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training-

(aa) for the commission of a terrorist activity;

(bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;

(cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or

(dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

(v) "Representative" defined
As used in this paragraph, the term "representative" includes an officer, official, or spokesman of an organization, and any person who directs, counsels, commands, or induces an organization or its members to engage in terrorist activity.

(vi) "Terrorist organization" defined
As used in this section, the term "terrorist organization" means an organization-

(I) designated under section 1189 of this title;

(II) otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or

(III) that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

(C) Foreign policy

(i) In general
An alien whose entry or proposed activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States is inadmissible.

(ii) Exception for officials
An alien who is an official of a foreign government or a purported government, or who is a candidate for election to a foreign government office during the period immediately preceding the election for that office, shall not be excludable or subject to restrictions or conditions on entry into the United States under clause (i) solely because of the alien's past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States.

(iii) Exception for other aliens
An alien, not described in clause (ii), shall not be excludable or subject to restrictions or conditions on entry into the United States under clause (i) because of the alien's past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States, unless the Secretary of State personally determines that the alien's admission would compromise a compelling United States foreign policy interest.

(iv) Notification of determinations
If a determination is made under clause (iii) with respect to an alien, the Secretary of State must notify on a timely basis the chairmen of the Committees on the Judiciary and Foreign Affairs of the House of Representatives and of the Committees on the Judiciary and Foreign Relations of the Senate of the identity of the alien and the reasons for the determination.

(D) Immigrant membership in totalitarian party

(i) In general
Any immigrant who is or has been a member of or affiliated with the Communist or any other totalitarian party (or subdivision or affiliate thereof), domestic or foreign, is inadmissible.

(ii) Exception for involuntary membership
Clause (i) shall not apply to an alien because of membership or affiliation if the alien establishes to the satisfaction of the consular officer when applying for a visa (or to the satisfaction of the Attorney General when applying for admission) that the membership or affiliation is or was involuntary, or is or was solely when under 16 years of age, by operation of law, or for purposes of obtaining employment, food rations, or other essentials of living and whether necessary for such purposes.

(iii) Exception for past membership
Clause (i) shall not apply to an alien because of membership or affiliation if the alien establishes to the satisfaction of the consular officer when applying for a visa (or to the satisfaction of the Attorney General when applying for admission) that-

(I) the membership or affiliation terminated at least-

(a) 2 years before the date of such application, or

(b) 5 years before the date of such application, in the case of an alien whose membership or affiliation was with the party controlling the government of a foreign state that is a totalitarian dictatorship as of such date, and

(II) the alien is not a threat to the security of the United States.

(iv) Exception for close family members
The Attorney General may, in the Attorney General's discretion, waive the application of clause (i) in the case of an immigrant who is the parent, spouse, son, daughter, brother, or sister of a citizen of the United States or a spouse, son, or daughter of an alien lawfully admitted for permanent residence for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest if the immigrant is not a threat to the security of the United States.

(E) Participants in Nazi persecution, genocide, or the commission of any act of torture or extrajudicial killing

(i) Participation in Nazi persecutions
Any alien who, during the period beginning on March 23, 1933, and ending on May 8, 1945, under the direction of, or in association with-

(I) the Nazi government of Germany,

(II) any government in any area occupied by the military forces of the Nazi government of Germany,

(III) any government established with the assistance or cooperation of the Nazi government of Germany, or

(IV) any government which was an ally of the Nazi government of Germany,

ordered, incited, assisted, or otherwise participated in the persecution of any person because of race, religion, national origin, or political opinion is inadmissible.

(ii) Participation in genocide

Any alien who ordered, incited, assisted, or otherwise participated in genocide, as defined in section 1091(a) of title 18, is inadmissible.

(iii) Commission of acts of torture or extrajudicial killings
Any alien who, outside the United States, has committed, ordered, incited, assisted, or otherwise participated in the commission of-

(I) any act of torture, as defined in section 2340 of title 18; or

(II) under color of law of any foreign nation, any extrajudicial killing, as defined in section 3(a) of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note),

 is inadmissible.

(F) Association with terrorist organizations
Any alien who the Secretary of State, after consultation with the Attorney General, or the Attorney General, after consultation with the Secretary of State, determines has been associated with a terrorist organization and intends while in the United States to engage solely, principally, or incidentally in activities that could endanger the welfare, safety, or security of the United States is inadmissible.

(G) Recruitment or use of child soldiers
Any alien who has engaged in the recruitment or use of child soldiers in violation of section 2442 of title 18 is inadmissible.

. . .

**(f) Suspension of entry or imposition of restrictions by President**
Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any

class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate. Whenever the Attorney General finds that a commercial airline has failed to comply with regulations of the Attorney General relating to requirements of airlines for the detection of fraudulent documents used by passengers traveling to the United States (including the training of personnel in such detection), the Attorney General may suspend the entry of some or all aliens transported to the United States by such airline.

## 8 U.S.C. § 1185. Travel control of citizens and aliens

### (a) Restrictions and prohibitions

Unless otherwise ordered by the President, it shall be unlawful-

(1) for any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe;

(2) for any person to transport or attempt to transport from or into the United States another person with knowledge or reasonable cause to believe that the departure or entry of such other person is forbidden by this section;

(3) for any person knowingly to make any false statement in an application for permission to depart from or enter the United States with intent to induce or secure the granting of such permission either for himself or for another;

(4) for any person knowingly to furnish or attempt to furnish or assist in furnishing to another a permit or evidence of permission to depart or enter not issued and designed for such other person's use;

(5) for any person knowingly to use or attempt to use any permit or evidence of permission to depart or enter not issued and designed for his use;

(6) for any person to forge, counterfeit, mutilate, or alter, or cause or procure to be forged, counterfeited, mutilated, or altered, any permit or evidence of permission to depart from or enter the United States;

(7) for any person knowingly to use or attempt to use or furnish to another for use any false, forged, counterfeited, mutilated, or altered permit, or evidence of permission, or any permit or

evidence of permission which, though originally valid, has become or been made void or invalid.

**(b) Citizens**

Except as otherwise provided by the President and subject to such limitations and exceptions as the President may authorize and prescribe, it shall be unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid United States passport.

**(c) Definitions**

The term "United States" as used in this section includes the Canal Zone, and all territory and waters, continental or insular, subject to the jurisdiction of the United States. The term "person" as used in this section shall be deemed to mean any individual, partnership, association, company, or other incorporated body of individuals, or corporation, or body politic.

**(d) Nonadmission of certain aliens**

Nothing in this section shall be construed to entitle an alien to whom a permit to enter the United States has been issued to enter the United States, if, upon arrival in the United States, he is found to be inadmissible under any of the provisions of this chapter, or any other law, relative to the entry of aliens into the United States.

**(e) Revocation of proclamation as affecting penalties**

The revocation of any rule, regulation, or order issued in pursuance of this section shall not prevent prosecution for any offense committed, or the imposition of any penalties or forfeitures, liability for which was incurred under this section prior to the revocation of such rule, regulation, or order.

**(f) Permits to enter**

Passports, visas, reentry permits, and other documents required for entry under this chapter may be considered as permits to enter for the purposes of this section.

## 8 U.S.C. § 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing

### (a) Inspection

(1) Aliens treated as applicants for admission
An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

(2) Stowaways
An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 1229a of this title.

(3) Inspection
All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

(4) Withdrawal of application for admission
An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

(5) Statements

An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

## (b) Inspection of applicants for admission

(1) Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled

(A) Screening

(i) In general

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

(ii) Claims for asylum

If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title and the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under subparagraph (B).

(iii) Application to certain other aliens

(I) In general
The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.

(II) Aliens described
An alien described in this clause is an alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

(B) Asylum interviews

(i) Conduct by asylum officers
An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii), either at a port of entry or at such other place designated by the Attorney General.

(ii) Referral of certain aliens
If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

(iii) Removal without further review if no credible fear of persecution

(I) In general
Subject to subclause (III), if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review.

(II) Record of determination

The officer shall prepare a written record of a determination under subclause (I). Such record shall include a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in the light of such facts, the alien has not established a credible fear of persecution. A copy of the officer's interview notes shall be attached to the written summary.

(III) Review of determination

The Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge of a determination under subclause (I) that the alien does not have a credible fear of persecution. Such review shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or by telephonic or video connection. Review shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination under subclause (I).

(IV) Mandatory detention

Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

(iv) Information about interviews

The Attorney General shall provide information concerning the asylum interview described in this subparagraph to aliens who may be eligible. An alien who is eligible for such interview may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, according to regulations prescribed by the Attorney General. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process.

(v) "Credible fear of persecution" defined

For purposes of this subparagraph, the term "credible fear of persecution" means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under section 1158 of this title.

(C) Limitation on administrative review

Except as provided in subparagraph (B)(iii)(III), a removal order entered in accordance with subparagraph (A)(i) or (B)(iii)(I) is not subject to administrative appeal, except that the Attorney General shall provide by regulation for prompt review of such an order under subparagraph (A)(i) against an alien who claims under oath, or as permitted under penalty of perjury under section 1746 of title 28, after having been warned of the penalties for falsely making such claim under such conditions, to have been lawfully admitted for permanent residence, to have been admitted as a refugee under section 1157 of this title, or to have been granted asylum under section 1158 of this title.

(D) Limit on collateral attacks

In any action brought against an alien under section 1325(a) of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(i) or (B)(iii).

(E) "Asylum officer" defined

As used in this paragraph, the term "asylum officer" means an immigration officer who-

(i) has had professional training in country conditions, asylum law, and interview techniques comparable to that provided to full-time adjudicators of applications under section 1158 of this title, and

(ii) is supervised by an officer who meets the condition described in clause (i) and has had substantial experience adjudicating asylum applications.

(F) Exception
Subparagraph (A) shall not apply to an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry.

(G) Commonwealth of the Northern Mariana Islands
Nothing in this subsection shall be construed to authorize or require any person described in section 1158(e) of this title to be permitted to apply for asylum under section 1158 of this title at any time before January 1, 2014.

(2) Inspection of other aliens

(A) In general
Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

(B) Exception
Subparagraph (A) shall not apply to an alien-

(i) who is a crewman,

(ii) to whom paragraph (1) applies, or

(iii) who is a stowaway.

(C) Treatment of aliens arriving from contiguous territory

In the case of an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a proceeding under section 1229a of this title.

(3) Enforcement by attorney general of a state

The attorney general of a State, or other authorized State officer, alleging a violation of the detention and removal requirements under paragraph (1) or (2) that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this paragraph to the greatest extent practicable. For purposes of this paragraph, a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

(4) Challenge of decision

The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien whose privilege to be admitted is so challenged, before an immigration judge for a proceeding under section 1229a of this title.

## (c) Removal of aliens inadmissible on security and related grounds

(1) Removal without further hearing

If an immigration officer or an immigration judge suspects that an arriving alien may be inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 1182(a)(3) of this title, the officer or judge shall-

(A) order the alien removed, subject to review under paragraph (2);

(B) report the order of removal to the Attorney General; and

(C) not conduct any further inquiry or hearing until ordered by the Attorney General.

(2) Review of order

(A) The Attorney General shall review orders issued under paragraph (1).

(B) If the Attorney General-

(i) is satisfied on the basis of confidential information that the alien is inadmissible under subparagraph (A) (other than clause (ii)), (B), or (C) of section 1182(a)(3) of this title, and

(ii) after consulting with appropriate security agencies of the United States Government, concludes that disclosure of the information would be prejudicial to the public interest, safety, or security,

the Attorney General may order the alien removed without further inquiry or hearing by an immigration judge.

(C) If the Attorney General does not order the removal of the alien under subparagraph (B), the Attorney General shall specify the further inquiry or hearing that shall be conducted in the case.

(3) Submission of statement and information
The alien or the alien's representative may submit a written statement and additional information for consideration by the Attorney General.

**(d) Authority relating to inspections**

(1) Authority to search conveyances
Immigration officers are authorized to board and search any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States.

(2) Authority to order detention and delivery of arriving aliens
Immigration officers are authorized to order an owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States-

> (A) to detain the alien on the vessel or at the airport of arrival, and

> (B) to deliver the alien to an immigration officer for inspection or to a medical officer for examination.

(3) Administration of oath and consideration of evidence
The Attorney General and any immigration officer shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, transit through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service.

(4) Subpoena authority

> (A) The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and

the administration of the Service, and to that end may invoke the aid of any court of the United States.

(B) Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph or refusal to testify before an immigration officer, issue an order requiring such persons to appear before an immigration officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof.

## 8 U.S.C. § 1229a. Removal proceedings

### (a) Proceeding

(1) In general
An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien.

(2) Charges
An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title.

(3) Exclusive procedures
Unless otherwise specified in this chapter, a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States. Nothing in this section shall affect proceedings conducted pursuant to section 1228 of this title.

### (b) Conduct of proceeding

(1) Authority of immigration judge
The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses. The immigration judge may issue subpoenas for the attendance of witnesses and presentation of evidence. The immigration judge shall have authority (under regulations prescribed by the Attorney General) to sanction by civil money penalty any action (or inaction) in contempt of the judge's proper exercise of authority under this chapter.

(2) Form of proceeding

(A) In general
The proceeding may take place-

(i) in person,

(ii) where agreed to by the parties, in the absence of the alien,

(iii) through video conference, or

(iv) subject to subparagraph (B), through telephone conference.

(B) Consent required in certain cases
An evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or through video conference.

(3) Presence of alien
If it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien.

(4) Alien's rights in proceeding
In proceedings under this section, under regulations of the Attorney General-

(A) the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings,

(B) the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government but these rights shall not entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's

admission to the United States or to an application by the
alien for discretionary relief under this chapter, and

(C) a complete record shall be kept of all testimony and
evidence produced at the proceeding.

(5) Consequences of failure to appear

(A) In general
Any alien who, after written notice required under
paragraph (1) or (2) of section 1229(a) of this title has been
provided to the alien or the alien's counsel of record, does not
attend a proceeding under this section, shall be ordered
removed in absentia if the Service establishes by clear,
unequivocal, and convincing evidence that the written notice
was so provided and that the alien is removable (as defined
in subsection (e)(2)). The written notice by the Attorney
General shall be considered sufficient for purposes of this
subparagraph if provided at the most recent address
provided under section 1229(a)(1)(F) of this title.

(B) No notice if failure to provide address information
No written notice shall be required under subparagraph (A)
if the alien has failed to provide the address required under
section 1229(a)(1)(F) of this title.

(C) Rescission of order
Such an order may be rescinded only-

(i) upon a motion to reopen filed within 180 days after the
date of the order of removal if the alien demonstrates that
the failure to appear was because of exceptional
circumstances (as defined in subsection (e)(1)), or

(ii) upon a motion to reopen filed at any time if the alien
demonstrates that the alien did not receive notice in
accordance with paragraph (1) or (2) of section 1229(a) of
this title or the alien demonstrates that the alien was in

Federal or State custody and the failure to appear was
through no fault of the alien.

The filing of the motion to reopen described in clause (i) or
(ii) shall stay the removal of the alien pending disposition of
the motion by the immigration judge.

(D) Effect on judicial review
Any petition for review under section 1252 of this title of an
order entered in absentia under this paragraph shall (except
in cases described in section 1252(b)(5) of this title) be
confined to (i) the validity of the notice provided to the alien,
(ii) the reasons for the alien's not attending the proceeding,
and (iii) whether or not the alien is removable.

(E) Additional application to certain aliens in contiguous
territory
The preceding provisions of this paragraph shall apply to all
aliens placed in proceedings under this section, including
any alien who remains in a contiguous foreign territory
pursuant to section 1225(b)(2)(C) of this title.

(6) Treatment of frivolous behavior
The Attorney General shall, by regulation-

(A) define in a proceeding before an immigration judge or
before an appellate administrative body under this
subchapter, frivolous behavior for which attorneys may be
sanctioned,

(B) specify the circumstances under which an administrative
appeal of a decision or ruling will be considered frivolous and
will be summarily dismissed, and

(C) impose appropriate sanctions (which may include
suspension and disbarment) in the case of frivolous behavior.

Nothing in this paragraph shall be construed as limiting the authority of the Attorney General to take actions with respect to inappropriate behavior.

(7) Limitation on discretionary relief for failure to appear
Any alien against whom a final order of removal is entered in absentia under this subsection and who, at the time of the notice described in paragraph (1) or (2) of section 1229(a) of this title, was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing, other than because of exceptional circumstances (as defined in subsection (e)(1)) to attend a proceeding under this section, shall not be eligible for relief under section 1229b, 1229c, 1255, 1258, or 1259 of this title for a period of 10 years after the date of the entry of the final order of removal.

## (c) Decision and burden of proof

(1) Decision

(A) In general
At the conclusion of the proceeding the immigration judge shall decide whether an alien is removable from the United States. The determination of the immigration judge shall be based only on the evidence produced at the hearing.

(B) Certain medical decisions
If a medical officer or civil surgeon or board of medical officers has certified under section 1222(b) of this title that an alien has a disease, illness, or addiction which would make the alien inadmissible under paragraph (1) of section 1182(a) of this title, the decision of the immigration judge shall be based solely upon such certification.

(2) Burden on alien
In the proceeding the alien has the burden of establishing-

(A) if the alien is an applicant for admission, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182 of this title; or

(B) by clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission.

In meeting the burden of proof under subparagraph (B), the alien shall have access to the alien's visa or other entry document, if any, and any other records and documents, not considered by the Attorney General to be confidential, pertaining to the alien's admission or presence in the United States.

(3) Burden on service in cases of deportable aliens

(A) In general
In the proceeding the Service has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable. No decision on deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence.

(B) Proof of convictions
In any proceeding under this chapter, any of the following documents or records (or a certified copy of such an official document or record) shall constitute proof of a criminal conviction:

(i) An official record of judgment and conviction.

(ii) An official record of plea, verdict, and sentence.

(iii) A docket entry from court records that indicates the existence of the conviction.

(iv) Official minutes of a court proceeding or a transcript of a court hearing in which the court takes notice of the existence of the conviction.

(v) An abstract of a record of conviction prepared by the court in which the conviction was entered, or by a State official associated with the State's repository of criminal justice records, that indicates the charge or section of law violated, the disposition of the case, the existence and date of conviction, and the sentence.

(vi) Any document or record prepared by, or under the direction of, the court in which the conviction was entered that indicates the existence of a conviction.

(vii) Any document or record attesting to the conviction that is maintained by an official of a State or Federal penal institution, which is the basis for that institution's authority to assume custody of the individual named in the record.

(C) Electronic records
In any proceeding under this chapter, any record of conviction or abstract that has been submitted by electronic means to the Service from a State or court shall be admissible as evidence to prove a criminal conviction if it is-

(i) certified by a State official associated with the State's repository of criminal justice records as an official record from its repository or by a court official from the court in which the conviction was entered as an official record from its repository, and

(ii) certified in writing by a Service official as having been received electronically from the State's record repository or the court's record repository.

A certification under clause (i) may be by means of a computer-generated signature and statement of authenticity.

(4) Applications for relief from removal

(A) In general
An alien applying for relief or protection from removal has the burden of proof to establish that the alien-

(i) satisfies the applicable eligibility requirements; and

(ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

(B) Sustaining burden
The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

(C) Credibility determination
Considering the totality of the circumstances, and all relevant factors, the immigration judge may base a

credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

(5) Notice
If the immigration judge decides that the alien is removable and orders the alien to be removed, the judge shall inform the alien of the right to appeal that decision and of the consequences for failure to depart under the order of removal, including civil and criminal penalties.

(6) Motions to reconsider

(A) In general
The alien may file one motion to reconsider a decision that the alien is removable from the United States.

(B) Deadline
The motion must be filed within 30 days of the date of entry of a final administrative order of removal.

(C) Contents
The motion shall specify the errors of law or fact in the previous order and shall be supported by pertinent authority.

(7) Motions to reopen

(A) In general
An alien may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv).

(B) Contents
The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material.

(C) Deadline

(i) In general
Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.

(ii) Asylum
There is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for relief under sections[2] 1158 or 1231(b)(3) of this title and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

---

[2] So in original. Probably should be "section".

(iii) Failure to appear
The filing of a motion to reopen an order entered pursuant to subsection (b)(5) is subject to the deadline specified in subparagraph (C) of such subsection.

(iv) Special rule for battered spouses, children, and parents
Any limitation under this section on the deadlines for filing such motions shall not apply-

(I) if the basis for the motion is to apply for relief under clause (iii) or (iv) of section 1154(a)(1)(A) of this title, clause (ii) or (iii) of section 1154(a)(1)(B) of this title,,[3] section 1229b(b) of this title, or section 1254(a)(3) of this title (as in effect on March 31, 1997);

(II) if the motion is accompanied by a cancellation of removal application to be filed with the Attorney General or by a copy of the self-petition that has been or will be filed with the Immigration and Naturalization Service upon the granting of the motion to reopen;

(III) if the motion to reopen is filed within 1 year of the entry of the final order of removal, except that the Attorney General may, in the Attorney General's discretion, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child; and

(IV) if the alien is physically present in the United States at the time of filing the motion.

The filing of a motion to reopen under this clause shall only stay the removal of a qualified alien (as defined in section 1641(c)(1)(B) of this title[4] pending the final disposition of the

---

[3] So in original. The second comma probably should not appear.

[4] So in original.  A closing parenthesis probably should appear.

motion, including exhaustion of all appeals if the motion establishes that the alien is a qualified alien.

## (d) Stipulated removal

The Attorney General shall provide by regulation for the entry by an immigration judge of an order of removal stipulated to by the alien (or the alien's representative) and the Service. A stipulated order shall constitute a conclusive determination of the alien's removability from the United States.

## (e) Definitions

In this section and section 1229b of this title:

> (1) Exceptional circumstances
> The term "exceptional circumstances" refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien.

> (2) Removable
> The term "removable" means-

>> (A) in the case of an alien not admitted to the United States, that the alien is inadmissible under section 1182 of this title, or

>> (B) in the case of an alien admitted to the United States, that the alien is deportable under section 1227 of this title.

# 8 U.S.C. § 1231. Detention and removal of aliens ordered removed

## (a) Detention, release, and removal of aliens ordered removed

(1) Removal period

(A) In general
Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

(B) Beginning of period
The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

(C) Suspension of period
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

(2) Detention

(A) In general
During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

(B) Enforcement by attorney general of a State
The attorney general of a State, or other authorized State officer, alleging a violation of the detention requirement under subparagraph (A) that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this subparagraph to the greatest extent practicable. For purposes of this subparagraph, a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

(3) Supervision after 90-day period
If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien-

(A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

(4) Aliens imprisoned, arrested, or on parole, supervised release, or probation

(A) In general
Except as provided in section 259(a) 1 of title 42 and paragraph (2),[5] the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.

(B) Exception for removal of nonviolent offenders prior to completion of sentence of imprisonment
The Attorney General is authorized to remove an alien in accordance with applicable procedures under this chapter before the alien has completed a sentence of imprisonment-

(i) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in section 1101(a)(43)(B), (C), (E), (I), or (L) of this title[6] and (II) the removal of the alien is appropriate and in the best interest of the United States; or

---

[5] So in original. Probably should be "subparagraph (B)".
[6] So in original. Probably should be followed by a closing parenthesis.

(ii) in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 1101(a)(43)(C) or (E) of this title), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

(C) Notice
Any alien removed pursuant to this paragraph shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens removed under subparagraph (B).

(D) No private right
No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

(5) Reinstatement of removal orders against aliens illegally reentering
If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

(6) Inadmissible or criminal aliens
An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with

the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

(7) Employment authorization
No alien ordered removed shall be eligible to receive authorization to be employed in the United States unless the Attorney General makes a specific finding that-

> (A) the alien cannot be removed due to the refusal of all countries designated by the alien or under this section to receive the alien, or

> (B) the removal of the alien is otherwise impracticable or contrary to the public interest.

## (b) Countries to which aliens may be removed

(1) Aliens arriving at the United States
Subject to paragraph (3)-

> (A) In general
> Except as provided by subparagraphs (B) and (C), an alien who arrives at the United States and with respect to whom proceedings under section 1229a of this title were initiated at the time of such alien's arrival shall be removed to the country in which the alien boarded the vessel or aircraft on which the alien arrived in the United States.

> (B) Travel from contiguous territory
> If the alien boarded the vessel or aircraft on which the alien arrived in the United States in a foreign territory contiguous to the United States, an island adjacent to the United States, or an island adjacent to a foreign territory contiguous to the United States, and the alien is not a native, citizen, subject, or national of, or does not reside in, the territory or island, removal shall be to the country in which the alien

boarded the vessel that transported the alien to the territory or island.

(C) Alternative countries
If the government of the country designated in subparagraph (A) or (B) is unwilling to accept the alien into that country's territory, removal shall be to any of the following countries, as directed by the Attorney General:

(i) The country of which the alien is a citizen, subject, or national.

(ii) The country in which the alien was born.

(iii) The country in which the alien has a residence.

(iv) A country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible.

(2) Other aliens
Subject to paragraph (3)-

(A) Selection of country by alien
Except as otherwise provided in this paragraph-

(i) any alien not described in paragraph (1) who has been ordered removed may designate one country to which the alien wants to be removed, and

(ii) the Attorney General shall remove the alien to the country the alien so designates.

(B) Limitation on designation
An alien may designate under subparagraph (A)(i) a foreign territory contiguous to the United States, an adjacent island, or an island adjacent to a foreign territory contiguous to the

United States as the place to which the alien is to be removed only if the alien is a native, citizen, subject, or national of, or has resided in, that designated territory or island.

(C) Disregarding designation
The Attorney General may disregard a designation under subparagraph (A)(i) if-

(i) the alien fails to designate a country promptly;

(ii) the government of the country does not inform the Attorney General finally, within 30 days after the date the Attorney General first inquires, whether the government will accept the alien into the country;

(iii) the government of the country is not willing to accept the alien into the country; or

(iv) the Attorney General decides that removing the alien to the country is prejudicial to the United States.

(D) Alternative country
If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen unless the government of the country-

(i) does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or

(ii) is not willing to accept the alien into the country.

(E) Additional removal countries
If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:

(i) The country from which the alien was admitted to the United States.

(ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.

(iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States.

(iv) The country in which the alien was born.

(v) The country that had sovereignty over the alien's birthplace when the alien was born.

(vi) The country in which the alien's birthplace is located when the alien is ordered removed.

(vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

(F) Removal country when United States is at war
When the United States is at war and the Attorney General decides that it is impracticable, inadvisable, inconvenient, or impossible to remove an alien under this subsection because of the war, the Attorney General may remove the alien-

(i) to the country that is host to a government in exile of the country of which the alien is a citizen or subject if the

government of the host country will permit the alien's entry; or

(ii) if the recognized government of the country of which the alien is a citizen or subject is not in exile, to a country, or a political or territorial subdivision of a country, that is very near the country of which the alien is a citizen or subject, or, with the consent of the government of the country of which the alien is a citizen or subject, to another country.

(3) Restriction on removal to a country where alien's life or freedom would be threatened

(A) In general
Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.

(B) Exception
Subparagraph (A) does not apply to an alien deportable under section 1227(a)(4)(D) of this title or if the Attorney General decides that-

(i) the alien ordered, incited, assisted, or otherwise participated in the persecution of an individual because of the individual's race, religion, nationality, membership in a particular social group, or political opinion;

(ii) the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States;

(iii) there are serious reasons to believe that the alien committed a serious nonpolitical crime outside the United States before the alien arrived in the United States; or

(iv) there are reasonable grounds to believe that the alien is a danger to the security of the United States.

For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime. For purposes of clause (iv), an alien who is described in section 1227(a)(4)(B) of this title shall be considered to be an alien with respect to whom there are reasonable grounds for regarding as a danger to the security of the United States.

(C) Sustaining burden of proof; credibility determinations
In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 1158(b)(1)(B) of this title.

## (c) Removal of aliens arriving at port of entry

(1) Vessels and aircraft
An alien arriving at a port of entry of the United States who is ordered removed either without a hearing under section 1225(b)(1) or 1225(c) of this title or pursuant to proceedings under section 1229a of this title initiated at the time of such alien's arrival shall be removed immediately on a vessel or aircraft owned by the owner of the vessel or aircraft on which the alien arrived in the United States, unless-

(A) it is impracticable to remove the alien on one of those vessels or aircraft within a reasonable time, or

(B) the alien is a stowaway-

(i) who has been ordered removed in accordance with section 1225(a)(1) of this title,

(ii) who has requested asylum, and

(iii) whose application has not been adjudicated or whose asylum application has been denied but who has not exhausted all appeal rights.

(2) Stay of removal

(A) In general
The Attorney General may stay the removal of an alien under this subsection if the Attorney General decides that-

(i) immediate removal is not practicable or proper; or

(ii) the alien is needed to testify in the prosecution of a person for a violation of a law of the United States or of any State.

(B) Payment of detention costs
During the period an alien is detained because of a stay of removal under subparagraph (A)(ii), the Attorney General may pay from the appropriation "Immigration and Naturalization Service-Salaries and Expenses"-

(i) the cost of maintenance of the alien; and

(ii) a witness fee of $1 a day.

(C) Release during stay

The Attorney General may release an alien whose removal is stayed under subparagraph (A)(ii) on-

(i) the alien's filing a bond of at least $500 with security approved by the Attorney General;

(ii) condition that the alien appear when required as a witness and for removal; and

(iii) other conditions the Attorney General may prescribe.

(3) Costs of detention and maintenance pending removal

(A) In general

Except as provided in subparagraph (B) and subsection (d),[7] an owner of a vessel or aircraft bringing an alien to the United States shall pay the costs of detaining and maintaining the alien-

(i) while the alien is detained under subsection (d)(1), and

(ii) in the case of an alien who is a stowaway, while the alien is being detained pursuant to-

(I) subsection (d)(2)(A) or (d)(2)(B)(i),

(II) subsection (d)(2)(B)(ii) or (iii) for the period of time reasonably necessary for the owner to arrange for repatriation or removal of the stowaway, including obtaining necessary travel documents, but not to extend beyond the date on which it is ascertained that such travel documents cannot be obtained from the country to which the stowaway is to be returned, or

---

[7] So in original. Probably should be subsection "(e)".

(III) section 1225(b)(1)(B)(ii) of this title, for a period not to exceed 15 days (excluding Saturdays, Sundays, and holidays) commencing on the first such day which begins on the earlier of 72 hours after the time of the initial presentation of the stowaway for inspection or at the time the stowaway is determined to have a credible fear of persecution.

(B) Nonapplication
Subparagraph (A) shall not apply if-

(i) the alien is a crewmember;

(ii) the alien has an immigrant visa;

(iii) the alien has a nonimmigrant visa or other documentation authorizing the alien to apply for temporary admission to the United States and applies for admission not later than 120 days after the date the visa or documentation was issued;

(iv) the alien has a reentry permit and applies for admission not later than 120 days after the date of the alien's last inspection and admission;

(v)(I) the alien has a nonimmigrant visa or other documentation authorizing the alien to apply for temporary admission to the United States or a reentry permit;

(II) the alien applies for admission more than 120 days after the date the visa or documentation was issued or after the date of the last inspection and admission under the reentry permit; and

(III) the owner of the vessel or aircraft satisfies the Attorney General that the existence of the condition relating to inadmissibility could not have been discovered by exercising reasonable care before the alien boarded the vessel or aircraft; or

(vi) the individual claims to be a national of the United States and has a United States passport.

## (d) Requirements of persons providing transportation

(1) Removal at time of arrival
An owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel or aircraft bringing an alien (except an alien crewmember) to the United States shall-

    (A) receive an alien back on the vessel or aircraft or another vessel or aircraft owned or operated by the same interests if the alien is ordered removed under this part; and

    (B) take the alien to the foreign country to which the alien is ordered removed.

(2) Alien stowaways
An owner, agent, master, commanding officer, charterer, or consignee of a vessel or aircraft arriving in the United States with an alien stowaway-

    (A) shall detain the alien on board the vessel or aircraft, or at such place as the Attorney General shall designate, until completion of the inspection of the alien by an immigration officer;

    (B) may not permit the stowaway to land in the United States, except pursuant to regulations of the Attorney General temporarily-

    (i) for medical treatment,

    (ii) for detention of the stowaway by the Attorney General, or

    (iii) for departure or removal of the stowaway; and

(C) if ordered by an immigration officer, shall remove the stowaway on the vessel or aircraft or on another vessel or aircraft.

The Attorney General shall grant a timely request to remove the stowaway under subparagraph (C) on a vessel or aircraft other than that on which the stowaway arrived if the requester has obtained any travel documents necessary for departure or repatriation of the stowaway and removal of the stowaway will not be unreasonably delayed.

(3) Removal upon order
An owner, agent, master, commanding officer, person in charge, purser, or consignee of a vessel, aircraft, or other transportation line shall comply with an order of the Attorney General to take on board, guard safely, and transport to the destination specified any alien ordered to be removed under this chapter.

**(e) Payment of expenses of removal**

(1) Costs of removal at time of arrival
In the case of an alien who is a stowaway or who is ordered removed either without a hearing under section 1225(a)(1)[8] or 1225(c) of this title or pursuant to proceedings under section 1229a of this title initiated at the time of such alien's arrival, the owner of the vessel or aircraft (if any) on which the alien arrived in the United States shall pay the transportation cost of removing the alien. If removal is on a vessel or aircraft not owned by the owner of the vessel or aircraft on which the alien arrived in the United States, the Attorney General may-

(A) pay the cost from the appropriation "Immigration and Naturalization Service-Salaries and Expenses"; and

---

[8] So in original. Probably should be "1225(b)(1)".

(B) recover the amount of the cost in a civil action from the owner, agent, or consignee of the vessel or aircraft (if any) on which the alien arrived in the United States.

(2) Costs of removal to port of removal for aliens admitted or permitted to land
In the case of an alien who has been admitted or permitted to land and is ordered removed, the cost (if any) of removal of the alien to the port of removal shall be at the expense of the appropriation for the enforcement of this chapter.

(3) Costs of removal from port of removal for aliens admitted or permitted to land

(A) Through appropriation
Except as provided in subparagraph (B), in the case of an alien who has been admitted or permitted to land and is ordered removed, the cost (if any) of removal of the alien from the port of removal shall be at the expense of the appropriation for the enforcement of this chapter.

(B) Through owner
(i) In general
In the case of an alien described in clause (ii), the cost of removal of the alien from the port of removal may be charged to any owner of the vessel, aircraft, or other transportation line by which the alien came to the United States.

(ii) Aliens described
An alien described in this clause is an alien who-

(I) is admitted to the United States (other than lawfully admitted for permanent residence) and is ordered removed within 5 years of the date of admission based on a ground that existed before or at the time of admission, or

(II) is an alien crewman permitted to land temporarily under section 1282 of this title and is ordered removed within 5 years of the date of landing.

(C) Costs of removal of certain aliens granted voluntary departure
In the case of an alien who has been granted voluntary departure under section 1229c of this title and who is financially unable to depart at the alien's own expense and whose removal the Attorney General deems to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this chapter.

## (f) Aliens requiring personal care during removal

(1) In general
If the Attorney General believes that an alien being removed requires personal care because of the alien's mental or physical condition, the Attorney General may employ a suitable person for that purpose who shall accompany and care for the alien until the alien arrives at the final destination.

(2) Costs
The costs of providing the service described in paragraph (1) shall be defrayed in the same manner as the expense of removing the accompanied alien is defrayed under this section.

## (g) Places of detention

(1) In general
The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal. When United States Government facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General may expend from the appropriation "Immigration and Naturalization Service-Salaries and Expenses", without regard to section 6101 of title 41,

amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities (including living quarters for immigration officers if not otherwise available) necessary for detention.

(2) Detention facilities of the Immigration and Naturalization Service
Prior to initiating any project for the construction of any new detention facility for the Service, the Commissioner shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for such use.

## (h) Statutory construction
Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person.

## (i) Incarceration

(1) If the chief executive officer of a State (or, if appropriate, a political subdivision of the State) exercising authority with respect to the incarceration of an undocumented criminal alien submits a written request to the Attorney General, the Attorney General shall, as determined by the Attorney General-

(A) enter into a contractual arrangement which provides for compensation to the State or a political subdivision of the State, as may be appropriate, with respect to the incarceration of the undocumented criminal alien; or

(B) take the undocumented criminal alien into the custody of the Federal Government and incarcerate the alien.

(2) Compensation under paragraph (1)(A) shall be the average cost of incarceration of a prisoner in the relevant State as determined by the Attorney General.

(3) For purposes of this subsection, the term "undocumented criminal alien" means an alien who-

(A) has been convicted of a felony or two or more misdemeanors; and

(B)(i) entered the United States without inspection or at any time or place other than as designated by the Attorney General;

(ii) was the subject of exclusion or deportation proceedings at the time he or she was taken into custody by the State or a political subdivision of the State; or

(iii) was admitted as a nonimmigrant and at the time he or she was taken into custody by the State or a political subdivision of the State has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status.

(4)     (A) In carrying out paragraph (1), the Attorney General shall give priority to the Federal incarceration of undocumented criminal aliens who have committed aggravated felonies.

(B) The Attorney General shall ensure that undocumented criminal aliens incarcerated in Federal facilities pursuant to this subsection are held in facilities which provide a level of security appropriate to the crimes for which they were convicted.

(5) There are authorized to be appropriated to carry out this subsection-

(A) $750,000,000 for fiscal year 2006;

(B) $850,000,000 for fiscal year 2007; and

(C) $950,000,000 for each of the fiscal years 2008 through 2011.

(6) Amounts appropriated pursuant to the authorization of appropriations in paragraph (5) that are distributed to a State or political subdivision of a State, including a municipality, may be used only for correctional purposes.

**Excerpts of 8 U.S.C. § 1252. Judicial review of orders of removal**

. . .

**(f) Limit on injunctive relief**

(1) In general
Regardless of the nature of the action or claim or of the identity of
the party or parties bringing the action, no court (other than the
Supreme Court) shall have jurisdiction or authority to enjoin or
restrain the operation of the provisions of part IV of this
subchapter, as amended by the Illegal Immigration Reform and
Immigrant Responsibility Act of 1996, other than with respect to
the application of such provisions to an individual alien against
whom proceedings under such part have been initiated.

(2) Particular cases
Notwithstanding any other provision of law, no court shall enjoin
the removal of any alien pursuant to a final order under this
section unless the alien shows by clear and convincing evidence
that the entry or execution of such order is prohibited as a matter
of law.

(3) Certain actions
Paragraph (1) shall not apply to an action brought pursuant to
section 1225(b)(3) of this title, subsections (e) or (f) of section 1226
of this title, or section 1231(a)(2)(B) of this title.

# Fed. R. Civ. P. 23. Class Actions

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(c) **Determination by Order Whether Class Action To Be Maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.**

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have

not requested exclusion, and whom the court finds to be members of the class.

(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

(d) **Orders in Conduct of Actions.** In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

(e) **Dismissal or Compromise.** A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

(f) **Appeals.** A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

### 8 C.F.R. § 208.30 Credible fear determinations involving stowaways and applicants for admission found inadmissible pursuant to section 212(a)(6)(C) or 212(a)(7) of the Act.

**(a) Jurisdiction.** The provisions of this subpart B apply to aliens subject to sections 235(a)(2) and 235(b)(1) of the Act. Pursuant to section 235(b)(1)(B) of the Act, DHS has exclusive jurisdiction to make the determinations described in this subpart B. Except as otherwise provided in this subpart B, paragraphs (b) through (g) of this section are the exclusive procedures applicable to stowaways and applicants for admission who are found inadmissible pursuant to section 212(a)(6)(C) or 212(a)(7) of the Act and who receive fear interviews, determinations, and reviews under section 235(b)(1)(B) of the Act. Prior to January 1, 2030, an alien physically present in or arriving in the Commonwealth of the Northern Mariana Islands is ineligible to apply for asylum and may only establish eligibility for withholding of removal pursuant to section 241(b)(3) of the Act or withholding or deferral of removal under the regulations issued pursuant to the Convention Against Torture's implementing legislation.

**(b) Process and authority.** If an alien subject to section 235(a)(2) or 235(b)(1) of the Act indicates an intention to apply for asylum, or expresses a fear of persecution or torture, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by a USCIS asylum officer in accordance with this section. A USCIS asylum officer shall then screen the alien for a credible fear of persecution or torture. An asylum officer, as defined in section 235(b)(1)(E) of the Act, has the authorities described in § 208.9(c). If in exercising USCIS's discretion, it is determined that circumstances so warrant, the asylum officer, after supervisory concurrence, may refer the alien for proceedings under section 240 of the Act without making a credible fear determination.

**(c) Treatment of family units.**

(1) A spouse or child of a principal alien who arrived in the United States concurrently with the principal alien shall be included in

that alien's positive credible fear evaluation and determination, unless the principal alien or the spouse or child declines such inclusion. Any alien may have his or her evaluation and determination made separately, if that alien expresses such a desire. The option for members of a family unit to have their evaluations and determinations made separately shall be communicated to all family members at the beginning of the interview process.

(2) The asylum officer in the officer's discretion may also include other accompanying family members who arrived in the United States concurrently with a principal alien in that alien's positive fear evaluation and determination for purposes of family unity.

(3) For purposes of family units in credible fear determinations, the category of "child" includes only unmarried persons under 21 years of age.

**(d) Interview**. A USCIS asylum officer will conduct the credible fear interview in a nonadversarial manner, separate and apart from the general public. The purpose of the interview shall be to elicit all relevant and useful information bearing on whether the alien can establish a credible fear of persecution or torture. The information provided during the interview may form the basis of an asylum application pursuant to paragraph (f) of this section and § 208.3(a)(2). The asylum officer shall conduct the interview as follows:

(1) If the officer conducting the interview determines that the alien is unable to participate effectively in the interview because of illness, fatigue, or other impediments, the officer may reschedule the interview.

(2) At the time of the interview, the asylum officer shall verify that the alien has received in writing the relevant information regarding the fear determination process. The officer shall also determine that the alien has an understanding of the fear determination process.

(3) The alien may be required to register his or her identity.

(4) The alien may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, and may present other evidence, if available. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process. Any person or persons with whom the alien chooses to consult may be present at the interview and may be permitted, in the discretion of the asylum officer, to present a statement at the end of the interview. The asylum officer, in his or her discretion, may place reasonable limits on the number of persons who may be present at the interview and on the length of the statement.

(5) If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language the alien speaks and understands, the asylum officer shall arrange for the assistance of an interpreter in conducting the interview. The interpreter must be at least 18 years of age and may not be the alien's attorney or representative of record, a witness testifying on the alien's behalf, a representative or employee of the alien's country of nationality, or, if the alien is stateless, the alien's country of last habitual residence.

(6) The asylum officer shall create a summary of the material facts as stated by the alien. At the conclusion of the interview, the officer shall review the summary with the alien and provide the alien with an opportunity to correct any errors therein.

**(e) Determination.**

(1) The asylum officer shall create a written record of the officer's determination, including a summary of the material facts as stated by the applicant, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the alien has established a credible fear of persecution or torture.

(2) An alien will be found to have a credible fear of persecution if there is a significant possibility, taking into account the credibility

of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien can establish eligibility for asylum under section 208 of the Act or for withholding of removal under section 241(b)(3) of the Act, including that the alien is not subject to a mandatory bar, if considered under paragraph (e)(5)(ii) of this section. However, prior to January 1, 2030, in the case of an alien physically present in or arriving in the Commonwealth of the Northern Mariana Islands, the officer may only find a credible fear of persecution if there is a significant possibility that the alien can establish eligibility for withholding of removal pursuant to section 241(b)(3) of the Act.

(3) An alien will be found to have a credible fear of torture if the alien shows that there is a significant possibility that the alien is eligible for withholding of removal or deferral of removal under the Convention Against Torture, pursuant to § 208.16 or § 208.17.

<Text of subsection (e)(4) effective until Dec. 31, 2025.>

(4) In determining whether the alien has a credible fear of persecution, as defined in section 235(b)(1)(B)(v) of the Act, or a credible fear of torture, the asylum officer shall consider whether the alien's case presents novel or unique issues that merit a positive credible fear finding pursuant to paragraph (f) of this section in order to receive further consideration of the application for asylum and withholding of removal.

<Text of subsection (e)(4) effective Dec. 31, 2025, as delayed by 86 FR 6847; 86 FR 15069; 86 FR 73615; 87 FR 79789; 89 FR 105386.>

(4) In all cases, the asylum officer will create a written record of his or her determination, including a summary of the material facts as stated by the alien, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the alien has established a credible fear of persecution, reasonable possibility of persecution, reasonable possibility of torture or that it is more likely than not that he or she would be

tortured in the prospective country of removal. In determining whether the alien has a credible fear of persecution, as defined in section 235(b)(1)(B)(v) of the Act, a reasonable possibility of persecution or torture, or that it is more likely than not that he or she would be tortured in the prospective country of removal, the asylum officer shall consider whether the alien's case presents novel or unique issues that merit consideration in a full hearing before an immigration judge.

<Text of subsection (e)(5) effective until Dec. 31, 2025.>

(5) Except as provided in paragraph (e)(6) or (7) of this section:

(i) If an alien is able to establish a credible fear of persecution or torture but appears to be subject to one or more of the mandatory bars to applying for, or being granted, asylum contained in section 208(a)(2) and (b)(2)(A)(vi) of the Act, the Department of Homeland Security shall nonetheless issue a Notice to Appear or retain jurisdiction over the alien's case for further consideration of the alien's claim pursuant to paragraph (f) of this section, if the alien is not a stowaway.

(ii) If an alien, who is unable to establish a credible fear of torture, is able to establish a credible fear of persecution but appears to be subject to one or more of the mandatory bars to being granted either asylum or withholding of removal, as set forth in section 208(b)(2)(A)(i) through (v) of the Act or section 241(b)(3)(B) of the Act, respectively, the asylum officer may consider the applicability of such bar(s) as part of the asylum officer's credible fear determination.

(A) The asylum officer shall issue a negative credible fear finding with regard to the alien's eligibility for asylum or withholding of removal under the Act if the asylum officer determines there is not a significant possibility that, in a proceeding on the merits, the alien

would be able to establish by a preponderance of the evidence that such bar(s) do not apply.

(B) The asylum officer shall issue a Notice to Appear or retain jurisdiction over the alien's case for further consideration of the alien's claim pursuant to paragraph (f) of this section, if the asylum officer finds that there is a significant possibility that, in a proceeding on the merits, the alien would be able to establish by a preponderance of the evidence that such bar(s) do not apply.

(iii) In all cases, if the alien is a stowaway and the Department would otherwise initiate proceedings under paragraphs (e)(5)(i) and (ii) of this section, the Department shall place the alien in proceedings for consideration of the alien's claim pursuant to § 208.2(c)(3) and shall not retain jurisdiction over the case for further consideration nor issue a Notice to Appear.

<Text of subsection (e)(5) effective Dec. 31, 2025, as delayed by 86 FR 6847; 86 FR 15069; 86 FR 73615; 87 FR 79789; 89 FR 105386.>

(5) Except as provided in paragraph (e)(6) or (7) of this section:

(i) If an alien is able to establish a credible fear of persecution or torture but appears to be subject to one or more of the mandatory bars to applying for, or being granted, asylum contained in section 208(a)(2) and (b)(2)(A)(vi) of the Act, the Department of Homeland Security shall nonetheless issue a Notice to Appear or retain jurisdiction over the alien's case for further consideration of the alien's claim pursuant to paragraph (f) of this section, if the alien is not a stowaway.

(ii) If an alien, who is unable to establish a credible fear of torture, is able to establish a credible fear of persecution but appears to be subject to one or more of the mandatory bars to

being granted either asylum or withholding of removal, as set forth in section 208(b)(2)(A)(i) through (v) of the Act or section 241(b)(3)(B) of the Act, respectively, the asylum officer may consider the applicability of such bar(s) as part of the asylum officer's credible fear determination.

> (A) The asylum officer shall issue a negative credible fear finding with regard to the alien's eligibility for asylum or withholding of removal under the Act if the asylum officer determines there is not a significant possibility that, in a proceeding on the merits, the alien would be able to establish by a preponderance of the evidence that such bar(s) do not apply.

> (B) The asylum officer shall issue a Notice to Appear or retain jurisdiction over the alien's case for further consideration of the alien's claim pursuant to paragraph (f) of this section, if the asylum officer finds that there is a significant possibility that, in a proceeding on the merits, the alien would be able to establish by a preponderance of the evidence that such bar(s) do not apply.

(iii) If the alien is found to be an alien described as ineligible for asylum in § 208.13(c)(4), then the asylum officer shall enter a negative credible fear determination with respect to the alien's application for asylum. If the alien—

> (A) Establishes, respectively, a reasonable possibility of persecution (including by establishing that he or she is not subject to one or more of the mandatory bars to eligibility for withholding of removal contained in section 241(b)(3)(B) of the Act) or torture; or

> (B) Would be able to establish a reasonable possibility of persecution but for the fact that he or she is subject to the mandatory bar to eligibility for withholding of removal under section 241(b)(3)(B)(iv) of the Act, but

nevertheless establishes that it is more likely than not that he or she would be tortured in the prospective country of removal, the Department of Homeland Security may, in the unreviewable discretion of the Secretary, either place the alien in asylum-and-withholding-only proceedings under 8 CFR 208.2(c)(1) for full consideration of the alien's claim for asylum under section 208 of the Act, withholding of removal under section 241(b)(3) of the Act or withholding or deferral of removal under the regulations issued pursuant to the implementing legislation for the Convention Against Torture, or remove the alien to a third country.

(1) If the Department places the alien in asylum-and-withholding-only proceedings under 8 CFR 208.2(c)(1), then the immigration judge shall review all issues de novo, including whether the alien has established that it is more likely than not that he or she would be tortured in the prospective country of removal.

(2) If the Department decides to remove the alien to a third country, it shall do so in a manner consistent with section 241 of the Act and § 241.15, including by not removing the alien to a third country in which, after being notified of the identity of the prospective third country of removal the alien has established during an interview with an asylum officer that he or she is more likely than not to be tortured in that country. Further, such a removal to a third country shall be executed only if the alien was: (i) Advised at the time of being determined to be subject to the mandatory bar to eligibility for withholding of removal under section 241(b)(3)(B)(iv) of the Act and under the regulations issued pursuant to the legislation

implementing the Convention Against Torture of the possibility of being removed to a third country prior to a determination or adjudication of the same under the conditions set forth in this paragraph, and

(ii) Provided, but did not accept, an opportunity to proceed to removal pursuant to section 241(b) of the Act, as appropriate.

(C) If an alien fails to establish a reasonable possibility of persecution or torture and is unable, during an interview with the asylum officer, to establish that it is more likely than not that he or she would be tortured in the prospective country of removal, then the asylum officer will provide the alien with a written notice of decision that will be subject to immigration judge review consistent with paragraph (g) of this section,

(iv)(A) Except as provided in paragraphs (e)(5)(ii) and (iii) or paragraph (e)(6) or (7) of this section, if an alien would be able to establish a credible fear of persecution or a reasonable possibility of persecution but for the fact that the alien is subject to the mandatory bars to being eligible for asylum contained in section 208(b)(2)(A)(iv) of the Act and to withholding of removal contained in section 241(b)(3)(B)(iv) of the Act:

(1) If the alien fails to establish, during an interview with the asylum officer, that it is more likely than not that he or she would be tortured in the prospective country of removal, then the asylum officer will provide the alien with a written notice of decision that will be subject to immigration judge review consistent with paragraph (g) of this section;

(2) If the alien establishes that it is more likely than not that he or she would be tortured in the prospective country of removal, the Department

of Homeland Security may, in the unreviewable discretion of the Secretary, either place the alien in asylum-and-withholding-only proceedings under 8 CFR 208.2(c)(1) for full consideration of the alien's claim for asylum under section 208 of the Act, withholding of removal under section 241(b)(3) of the Act or withholding or deferral of removal under the regulations issued pursuant to the implementing legislation for the Convention Against Torture, or remove the alien to a third country.

(i) If the Department places the alien in asylum-and-withholding-only proceedings under 8 CFR 208.2(c)(1), then the IJ shall review all issues de novo, including whether the alien has established that it is more likely than not that he or she would be tortured in the prospective country of removal.

(ii) If the Department decides to remove the alien to a third country, it shall do so in a manner consistent with section 241 of the Act and § 241.15, including by not removing the alien to a third country in which, after being notified of the identity of the proposed third country of removal, the alien has established that he or she would be more likely than not to be tortured. Further, such a removal shall be executed only if the alien was advised at the time of being determined to be subject to the mandatory bar to eligibility for withholding of removal under section 241(b)(3)(B)(iv) of the Act and under the regulations issued pursuant to the legislation implementing the Convention Against Torture of the possibility of being removed to a third country prior to a determination or adjudication of the same under the conditions set forth in this paragraph (e)(5)(iv) and provided with, but did not accept, an opportunity to proceed to removal

pursuant to section 241(b) of the Act, as appropriate.

(6) Prior to any determination concerning whether an alien arriving in the United States at a U.S.–Canada land border port-of-entry or in transit through the United States during removal by Canada or an alien who, on or after 12:01 a.m. on Saturday, March 25, 2023, entered the United States by crossing the U.S.–Canada land border between the ports-of-entry, including a crossing of the border in those waters as mutually designated by the United States and Canada, and who made an asylum or other protection claim relating to fear of persecution or torture within 14 days after such crossing, has a credible fear of persecution or torture, the asylum officer shall conduct a threshold screening interview to determine whether such an alien is ineligible to apply for asylum pursuant to section 208(a)(2)(A) of the Act and subject to removal to Canada by operation of the Agreement Between the Government of the United States and the Government of Canada for Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries ("Agreement"), which includes the Additional Protocol of 2022 to the Agreement Between the Government of the United States of America and the Government of Canada For Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries ("Additional Protocol of 2022"). In conducting this threshold screening interview, the asylum officer shall apply all relevant interview procedures outlined in paragraph (d) of this section, provided however, that paragraph (d)(2) of this section shall not apply to aliens described in this paragraph (e)(6). The asylum officer shall advise the alien of the exceptions contained in the Agreement, which includes the Additional Protocol of 2022, and question the alien as to applicability of any of these exceptions to the alien's case.

(i) If the asylum officer, with concurrence from a supervisory asylum officer, determines that an alien is subject to the Agreement, which includes the Additional Protocol of 2022, and that an alien does not qualify for an exception under the Agreement, which includes the Additional Protocol of 2022,

during this threshold screening interview, the alien is ineligible to apply for asylum in the United States. After the asylum officer's documented finding is reviewed by a supervisory asylum officer, the alien shall be advised that the alien will be removed to Canada in order to pursue the alien's claims relating to a fear of persecution or torture under Canadian law. Aliens found ineligible to apply for asylum under this paragraph shall be removed to Canada.

(ii) If the alien establishes by a preponderance of the evidence that the alien qualifies for an exception under the terms of the Agreement, which includes the Additional Protocol of 2022, the asylum officer shall make a written notation of the basis of the exception, and then proceed immediately to a determination concerning whether the alien has a credible fear of persecution or torture under paragraph (d) of this section.

(iii) An alien qualifies for an exception to the Agreement, which includes the Additional Protocol of 2022, if the alien is not being removed from Canada in transit through the United States and:

(A) Is a citizen of Canada or, not having a country of nationality, is a habitual resident of Canada;

(B) Has in the United States a spouse, son, daughter, parent, legal guardian, sibling, grandparent, grandchild, aunt, uncle, niece, or nephew who has been granted asylum, refugee, or other lawful status in the United States, provided, however, that this exception shall not apply to an alien whose relative maintains only nonimmigrant visitor status, as defined in section 101(a)(15)(B) of the Act, or whose relative maintains only visitor status based on admission to the United States pursuant to the Visa Waiver Program;

(C) Has in the United States a spouse, son, daughter, parent, legal guardian, sibling, grandparent, grandchild, aunt, uncle, niece, or nephew who is at least 18 years of age and has an asylum application pending before U.S. Citizenship and Immigration Services, the Executive Office for Immigration Review, or on appeal in federal court in the United States;

(D) Is unmarried, under 18 years of age, and does not have a parent or legal guardian in either Canada or the United States;

(E) Arrived in the United States with a validly issued visa or other valid admission document, other than for transit, issued by the United States to the alien, or, being required to hold a visa to enter Canada, was not required to obtain a visa to enter the United States; or

(F) The Director of USCIS, or the Director's designee, determines, in the exercise of unreviewable discretion, that it is in the public interest to allow the alien to pursue a claim for asylum, withholding of removal, or protection under the Convention Against Torture, in the United States.

(iv) As used in paragraphs (e)(6)(iii)(B), (C), and (D) of this section only, "legal guardian" means a person currently vested with legal custody of such an alien or vested with legal authority to act on the alien's behalf, provided that such an alien is both unmarried and less than 18 years of age, and provided further that any dispute with respect to whether an individual is a legal guardian will be resolved on the basis of U.S. law.

(7) When an immigration officer has made an initial determination that an alien, other than an alien described in paragraph (e)(6) of this section and regardless of whether the alien is arriving at a port of entry, appears to be subject to the terms of

an agreement authorized by section 208(a)(2)(A) of the Act, and seeks the alien's removal consistent with that provision, prior to any determination concerning whether the alien has a credible fear of persecution, reasonable possibility of persecution, or a reasonable possibility of torture, the asylum officer shall conduct a threshold screening interview to determine whether the alien is ineligible to apply for asylum in the United States and is subject to removal to a country ("receiving country") that is a signatory to the applicable agreement authorized by section 208(a)(2)(A) of the Act, other than the U.S.–Canada Agreement, which includes the Additional Protocol of 2022. In conducting this threshold screening interview, the asylum officer shall apply all relevant interview procedures outlined in paragraph (d) of this section, except that paragraphs (d)(2) and (4) of this section shall not apply to aliens described in this paragraph (e)(7). The asylum officer shall advise the alien of the applicable agreement's exceptions and question the alien as to applicability of any of these exceptions to the alien's case. The alien shall be provided written notice that if the alien fears removal to the prospective receiving country because of the likelihood of persecution on account of a protected ground or torture in that country and wants the officer to determine whether it is more likely than not that the alien would be persecuted on account of a protected ground or tortured in that country, the alien should affirmatively state to the officer such a fear of removal. If the alien affirmatively states such a fear, the asylum officer will determine whether the individual has demonstrated that it is more likely than not that the alien would be persecuted on account of a protected ground or tortured in that country.

    (i)    (A) If the asylum officer, with concurrence from a supervisory asylum officer, determines during the threshold screening interview that an alien does not qualify for an exception under the applicable agreement, and, if applicable, that the alien has not demonstrated that it is more likely than not that he or she would be persecuted on account of a protected ground or tortured in the receiving country, the alien is ineligible to apply for asylum in the United States.

Subject to paragraph (e)(7)(i)(B) of this section, after the asylum officer's documented finding is reviewed by a supervisory asylum officer, the alien shall be advised that he or she will be removed to the receiving country, as appropriate under the applicable agreement, in order to pursue his or her claims relating to a fear of persecution or torture under the law of the receiving country. Prior to removal to a receiving country under an agreement authorized by section 208(a)(2)(A), the alien shall be informed that, in the receiving country, the alien will have an opportunity to pursue the alien's claim for asylum or equivalent temporary protection.

(B) Aliens found ineligible to apply for asylum under this paragraph (e)(7) shall be removed to the receiving country, depending on the applicable agreement, unless the alien voluntarily withdraws his or her request for asylum.

(ii) If the alien establishes by a preponderance of the evidence that he or she qualifies for an exception under the terms of the applicable agreement, or would more likely than not be persecuted on account of his or her race, religion, nationality, membership in a particular social group, or tortured, in the receiving country, the asylum officer shall make a written notation to that effect, and may then proceed to determine whether any other agreement is applicable to the alien under the procedures set forth in this paragraph (e)(7). If the alien establishes by a preponderance of the evidence that he or she qualifies for an exception under the terms of each of the applicable agreements, or would more likely than not be persecuted on account of his or her race, religion, nationality, membership in a particular social group, or tortured, in each of the prospective receiving countries, the asylum officer shall make a written notation to that effect, and then proceed immediately to a determination concerning whether the alien has a credible fear of persecution, reasonable possibility of persecution, or a

reasonable possibility of torture, under paragraph (d) of this section.

(iii) An exception to an applicable agreement is defined under the terms of the agreement itself. Each agreement, including any exceptions, will be announced in a Federal Register document. If the asylum officer determines that an alien is within one of the classes covered by a section 208(a)(2)(A) agreement, the officer shall next determine whether the alien meets any of the applicable agreement's exceptions. Regardless of whether the text of the applicable agreement provides for the following exceptions, all such agreements, by operation of section 208(a)(2)(A) of the Act, and as applicable to the United States, are deemed to contain the following provisions:

(A) No alien may be removed, pursuant to an agreement authorized by section 208(a)(2)(A), to the alien's country of nationality, or, if the alien has no nationality, to the alien's country of last habitual residence; and

(B) No alien may be removed, pursuant to an agreement authorized by section 208(a)(2)(A), where the Director of USCIS, or the Director's designee, determines, in the exercise of unreviewable discretion, that it is in the public interest for the alien to receive asylum in the United States, and that the alien therefore may apply for asylum, withholding of removal, or protection under the Convention Against Torture, in the United States.

(iv) If the asylum officer determines the alien meets an exception under the applicable agreement, or would more likely than not be persecuted on account of a protected ground or tortured in the prospective receiving country, the officer may consider whether the alien is subject to another agreement and its exceptions or would more likely than not

be persecuted on account of a protected ground or tortured in another receiving country. If another section 208(a)(2)(A) agreement may not be applied to the alien, the officer should immediately proceed to a credible fear interview.

(8) An asylum officer's determination shall not become final until reviewed by a supervisory asylum officer.

<Text of subsection (f) effective until Dec. 31, 2025.>

(f) **Procedures for a positive credible fear finding.** If an alien, other than an alien stowaway, is found to have a credible fear of persecution or torture, the asylum officer will so inform the alien and issue the alien a record of the positive credible fear determination, including copies of the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based. The documents may be served in-person, by mail, or electronically. USCIS has complete discretion to either issue a Form I–862, Notice to Appear, for full consideration of the asylum and withholding of removal claim in proceedings under section 240 of the Act, or retain jurisdiction over the application for asylum pursuant to § 208.2(a)(1)(ii) for further consideration in a hearing pursuant to § 208.9. Should any part of 8 CFR 1240.17 be enjoined or vacated, USCIS has the discretion to determine that it will issue a Form I–862, Notice to Appear, in all cases that receive a positive credible fear determination. If an alien stowaway is found to have a credible fear of persecution or torture, the asylum officer will so inform the alien and issue a Form I–863, Notice of Referral to Immigration Judge, for full consideration of the asylum claim, or the withholding of removal claim, in proceedings under § 208.2(c). Parole of the alien may be considered only in accordance with section 212(d)(5) of the Act and 8 CFR 212.5.

<Text of subsection (f) effective Dec. 31, 2025, as delayed by 86 FR 6847; 86 FR 15069; 86 FR 73615; 87 FR 79789; 89 FR 105386.>

(f) **Procedures for a positive fear determination.** If, pursuant to paragraph (e) of this section, an alien stowaway or an alien subject to expedited removal establishes either a credible fear of persecution,

reasonable possibility of persecution, a reasonable possibility of torture, or that it is more likely than not that they would be tortured in the prospective country of removal:

> (1) Except as provided in paragraphs (e)(5)(iii) through (iv) of this section, DHS shall issue a Notice of Referral to Immigration Judge for asylum-and-withholding-only proceedings under 8 CFR 208.2(c)(1).

> (2) Parole of the alien may be considered only in accordance with section 212(d)(5) of the Act and 8 CFR 212.5 of this chapter.

**(g) Procedures for a negative credible fear finding.**

> <Text of subsection (g)(1) effective until Dec. 31, 2025.>

(1) If an alien is found not to have a credible fear of persecution or torture, the asylum officer shall provide the alien with a written notice of decision and issue the alien a record of the credible fear determination, including copies of the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based. The asylum officer shall inquire whether the alien wishes to have an immigration judge review the negative decision, which shall include an opportunity for the alien to be heard and questioned by the immigration judge as provided for under section 235(b)(1)(B)(iii)(III) of the Act, using Form I–869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge. The alien shall indicate whether the alien desires such review on Form I–869. A refusal or failure by the alien to make such indication shall be considered a request for review.

> (i) If the alien requests such review, or refuses or fails to either request or decline such review, the asylum officer shall serve the alien with a Form I–863, Notice of Referral to Immigration Judge, for review of the credible fear determination in accordance with paragraph (g)(2) of this section. USCIS may, in its discretion, reconsider a negative

credible fear finding that has been concurred upon by an immigration judge provided such reconsideration is requested by the alien or initiated by USCIS no more than 7 calendar days after the concurrence by the immigration judge, or prior to the alien's removal, whichever date comes first, and further provided that no previous request for reconsideration of that negative finding has already been made. The provisions of 8 CFR 103.5 shall not apply to credible fear determinations.

(ii) If the alien is not a stowaway and does not request a review by an immigration judge, DHS shall order the alien removed and issue a Form I–860, Notice and Order of Expedited Removal, after review by a supervisory asylum officer.

(iii) If the alien is a stowaway and the alien does not request a review by an immigration judge, the asylum officer shall refer the alien to the district director for completion of removal proceedings in accordance with section 235(a)(2) of the Act.

<Text of subsection (g)(1) effective Dec. 31, 2025, as delayed by 86 FR 6847; 86 FR 15069; 86 FR 73615; 87 FR 79789; 89 FR 105386.>

(1) If, pursuant to paragraphs (e) and (f) of this section, an alien does not establish a credible fear of persecution, reasonable possibility of persecution, reasonable possibility of torture, or that he or she is more likely than not to be tortured in the prospective country of removal, DHS shall provide the alien with a written notice of decision and inquire whether the alien wishes to have an immigration judge review the negative determination, in accordance with section 235(b)(1)(B)(iii)(III) of the Act and this § 208.30. The alien must indicate whether he or she desires such review on a Record of Negative Fear Finding and Request for Review by Immigration Judge. If the alien refuses to make an indication, DHS shall consider such a response as a decision to decline review.

(2)    (i) Immigration judges will review negative credible fear findings as provided in 8 CFR 1003.42 and 1208.30(g).

(ii) The record of the negative credible fear determination, including copies of the Form I–863, Notice of Referral to Immigration Judge, the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based shall be provided to the immigration judge with the negative determination.

## Presidential Documents

Proclamation 10888 of January 20, 2025

## Guaranteeing the States Protection Against Invasion

By the President of the United States of America

A Proclamation

By the authority vested in me as President by the Constitution and the laws of the United States of America, I hereby proclaim:

An essential feature of any sovereign nation is the existence of territorial boundaries and the inherent authority to decide who and what may cross those boundaries. The Supreme Court of the United States has described this power as a "fundamental act of sovereignty," which "stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *U.S. ex rel. Knauff* v. *Shaughnessy,* 338 U.S. 537, 542 (1950). The Supreme Court has recognized the inherent right and duty of the Executive Branch to defend our national sovereignty, stating that "[w]hen Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power." *Id.*

The Congress has, in establishing "an uniform Rule of Naturalization," created a complex and comprehensive Federal scheme in the Immigration and Nationality Act (INA), 8 U.S.C. 1101 *et seq.,* to control the entry and exit of people and goods across the borders of the United States. In routine circumstances, this complex and comprehensive scheme can protect the national sovereignty of the United States by facilitating the admission of individuals whose presence serves the national interest and preventing the admission of those who do not, such as those aliens who pose threats to public health, section 212(a)(1) of the INA, 8 U.S.C. 1182(a)(1); safety, section 212(a)(2) (8 U.S.C. 1182(a)(2)); and national security, section 212(a)(3) (8 U.S.C. 1182(a)(3)). Prospective immigrants who use the visa system are screened for such health, safety, and security concerns while outside of the United States, and are not permitted to enter the United States until they establish that they are eligible to be admitted as a matter of law and should be admitted as a matter of discretion.

But screening under those provisions of the INA can be wholly ineffective in the border environment, where access to necessary information is limited for aliens who have traveled from countries around the world to enter the United States illegally, or when the system is overwhelmed, leading to the unauthorized entry of innumerable illegal aliens into the United States.

Due to significant information gaps—particularly in the border environment—and processing times, Federal officials do not have the ability to verify with certainty the criminal record or national-security risks associated with the illegal entry of every alien at the southern border, as required by section 212(a)(2)–(3) of the INA, 8 U.S.C. 1182(a)(2)–(3). Nor do aliens who illegally cross the southern border readily provide comprehensive background information from their home countries to Federal law enforcement officials.

The public safety and national security risks in such an environment are heightened by the presence of, and control of territory by, international cartels and other transnational criminal organizations on the other side of the southern border, as well as terrorists and other malign actors who intend to harm the United States and the American people. And the risks

associated with these issues are greatly exacerbated when the number of aliens illegally crossing the southern border increases to levels that prevent actual operational control of the border.

The same is true for public health, where the Federal Government currently lacks an effective operational capability to screen all illegal aliens crossing the southern border for communicable diseases of public-health concern, as required by section 212(a)(1) of the INA, 8 U.S.C. 1182(a)(1). Effectively no aliens who illegally enter the United States provide Federal officials at the southern border with their comprehensive health information, as a lawful immigrant would. As a result, innumerable aliens potentially carrying communicable diseases of public health significance illegally cross the southern border and enter communities across the United States.

Over the last 4 years, at least 8 million illegal aliens were encountered along the southern border of the United States, and countless millions more evaded detection and illegally entered the United States. The sheer number of aliens entering the United States has overwhelmed the system and rendered many of the INA's provisions ineffective, including those previously described that are intended to prevent aliens posing threats to public health, safety, and national security from entering the United States. As a result, millions of aliens who potentially pose significant threats to health, safety, and national security have moved into communities nationwide.

This ongoing influx of illegal aliens across the southern border of the United States has placed significant costs and constraints upon the States, which have collectively spent billions of dollars in providing medical care and related human services, and have spent considerable amounts on increased law enforcement costs associated with the presence of these illegal aliens within their boundaries.

In joining the Union, the States agreed to surrender much of their sovereignty and join the Union in exchange for the Federal Government's promise in Article IV, Section 4 of the U.S. Constitution, to "protect each of [the States] against Invasion." I have determined that the current state of the southern border reveals that the Federal Government has failed in fulfilling this obligation to the States and hereby declare that an invasion is ongoing at the southern border, which requires the Federal Government to take measures to fulfill its obligation to the States.

The INA provides the President with certain emergency tools. For example, it states that "[w]henever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. 1182(f). This statute "exudes deference to the President in every clause." *Trump* v. *Hawaii,* 585 U.S. 667, 684 (2018). Further, the INA renders it unlawful for "any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe." 8 U.S.C. 1185(a)(1).

Historically, Presidents have used these statutory authorities to deny entry of designated classes and categories of aliens into the United States through ports of entry. But if the President has the power to deny entry of any alien into the United States, and to impose any restrictions as he may deem appropriate, this authority necessarily includes the right to deny the physical entry of aliens into the United States and impose restrictions on access to portions of the immigration system, particularly when the number of aliens illegally crossing the southern border prevents the Federal Government from obtaining operational control of the border.

The INA does not, however, occupy the Federal Government's field of authority to protect the sovereignty of the United States, particularly in times

of emergency when entire provisions of the INA are rendered ineffective by operational constraints, such as when there is an ongoing invasion into the States. The President's inherent powers to control the borders of the United States, including those deriving from his authority to control the foreign affairs of the United States, necessarily include the ability to prevent the physical entry of aliens involved in an invasion into the United States, and to rapidly repatriate them to an alternative location. Only through such measures can the President guarantee the right of each State to be protected against invasion.

By the power vested in me by the Constitution and the laws of the United States, I have determined that the current situation at the southern border qualifies as an invasion under Article IV, Section 4 of the Constitution of the United States. Accordingly, I am issuing this Proclamation based on my express and inherent powers in Article II of the Constitution of the United States, and in faithful execution of the immigration laws passed by the Congress, and suspending the physical entry of aliens involved in an invasion into the United States across the southern border until I determine that the invasion has concluded.

NOW, THEREFORE, I, Donald J. Trump, President of the United States of America, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), and section 301 of title 3, United States Code, hereby direct as follows:

**Section 1**. *Suspension of Entry*. I hereby proclaim, pursuant to sections 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), that the entry into the United States on or after the date of this order of aliens engaged in the invasion across the southern border is detrimental to the interests of the United States. I therefore direct that entry into the United States of such aliens be suspended until I issue a finding that the invasion at the southern border has ceased.

**Sec. 2**. *Imposition of Restrictions on Entry for Aliens Invading the United States*. I hereby proclaim, pursuant to sections 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), that aliens engaged in the invasion across the southern border of the United States on or after the date of this proclamation are restricted from invoking provisions of the INA that would permit their continued presence in the United States, including, but not limited to, section 208 of the INA, 8 U.S.C. 1158, until I issue a finding that the invasion at the southern border has ceased.

**Sec. 3**. *Suspension of and Restriction on Entry for Aliens Posing Public Health, Safety, or National Security Risks*. I hereby proclaim, pursuant to sections 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), that the entry into the United States, on or after the date of this order, of any alien who fails, before entering the United States, to provide Federal officials with sufficient medical information and reliable criminal history and background information as to enable fulfillment of the requirements of sections 212(a)(1)–(3) of the INA, 8 U.S.C. 1182(a)(1)–(3), is detrimental to the interests of the United States. I therefore direct that entry into the United States of such aliens be suspended and restrict their access to provisions of the INA that would permit their continued presence in the United States, including, but not limited to, section 208 of the INA, 8 U.S.C. 1158.

**Sec. 4**. *Constitutional Suspension of Physical Entry*. Under the authorities provided to me under Article II of the Constitution of the United States, including my control over foreign affairs, and to effectuate the guarantee of protection against invasion required by Article IV, Section 4, I hereby suspend the physical entry of any alien engaged in the invasion across the southern border of the United States, and direct the Secretary of Homeland Security, in coordination with the Secretary of State and the Attorney General, to take appropriate actions as may be necessary to achieve the

objectives of this proclamation, until I issue a finding that the invasion at the southern border has ceased.

**Sec. 5**. *Operational Actions to Repel the Invasion.* The Secretary of Homeland Security, in coordination with the Secretary of State and the Attorney General, shall take all appropriate action to repel, repatriate, or remove any alien engaged in the invasion across the southern border of the United States on or after the date of this order, whether as an exercise of the suspension power in section 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), or as an exercise of my delegated authority under the Constitution of the United States, until I issue a finding that the invasion at the southern border has ceased.

**Sec. 6**. *General Provisions.* (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This proclamation shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

IN WITNESS WHEREOF, I have hereunto set my hand this twentieth day of January, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

[FR Doc. 2025–01951
Filed 1–28–25; 8:45 am]
Billing code 3395–F4–P