**[ORAL ARGUMENT HEARD NOVERMBER 3, 2025]**

**No. 25-5243**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

REFUGEE AND IMMIGRANT CENTER FOR EDUCATION
AND LEGAL SERVICES, *et al.*,
*Plaintiffs-Appellees,*

v.

MARKWAYNE MULLIN, *et al.*,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the District of Columbia

---

## UNOPPOSED MOTION TO STAY MANDATE PENDING THE
## FILING AND DISPOSITION OF A
## PETITION FOR A WRIT OF CERTIORARI

(Relief Requested by July 27, 2026)

---

PATRICK GLEN
KATHERINE J. SHINNERS
 *Senior Litigation Counsel*
 *Office of Immigration Litigation*
 *General Litigation and Appeals*
  *Section*

BRETT A. SHUMATE
 *Assistant Attorney General*
DREW C. ENSIGN
 *Deputy Assistant Attorney*
 *General*
BENJAMIN HAYES
 *Senior Counsel to the Assistant*
  *Attorney General*
 U.S. Department of Justice
  Civil Division
 950 Pennsylvania Avenue, N.W.
 Washington, DC 20530

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

STATEMENT................................................................................................4

    A.    Statutory Background....................................................................4

    B.    Factual Background ......................................................................5

            1.    The Border Crisis...........................................................5

            2.    The President's Proclamation to Secure the Border ...........................................................................7

    C.    Procedural Background.................................................................9

ARGUMENT................................................................................................10

I.    The Government's petition for certiorari will present substantial questions for Supreme Court review. .........................10

II.    There is good cause to stay the mandate pending Supreme Court review. ...............................................................................13

CONCLUSION .............................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*INS v. Aguirre-Aguirre,*
526 U.S. 415 (1999) ..................................................................2, 4, 11

*Moncrieffe v. Holder,*
569 U.S. 184 (2013) ..............................................................................11

*Mullin v. Al Otro Lado,*
609 U.S. ---, 2026 WL 1825741 (June 25, 2026) ................................12

*Mullin v. Doe,*
609 U.S. ---, 2026 WL 1825840 (June 25, 2026) ................................12

*Trump v. Hawaii,*
585 U.S. 667 (2018) ..............................................................................12

**Statutes:**

8 U.S.C. §1158 ........................................................................4, 8, 11

8 U.S.C. §1182(a) ....................................................................................4

8 U.S.C. §1182(f) .....................................................................................4

8 U.S.C. §1225(b)(1) ...............................................................................5

8 U.S.C. §1231(b)(3) ...............................................................................8

**Regulation:**

8 C.F.R. §208.18 ......................................................................................8

**Rules:**

Fed. R. App. P. 41(d) ..............................................................1, 10, 12, 13

D.C. Cir. R. 41(a) ..........................................................................1, 10

**Other Authority:**

Proclamation 10888, 90 Fed. Reg. 8333 (Jan. 20, 2025)...........................8

# GLOSSARY

INA....................................................... Immigration and Nationality Act

## INTRODUCTION

Defendants-Appellants respectfully request that this Court stay the issuance of its mandate under Fed. R. App. P. 41(d) and D.C. Cir. R. 41(a)(2) for a period of 30-days from the denial of the petition for rehearing en banc—through August 24, 2026—to be extended upon the filing of a petition for a writ of certiorari until the Supreme Court's disposition of the petition and, if granted, its decision on the merits. *See* Fed. R. App. P. 41(d)(2)(B). In addition, the Court should order that the requested stay of the mandate be conditioned on the Government at this juncture forgoing filing an application in the Supreme Court requesting a stay of those portions of the district court's injunction that are not covered by this Court's partial stay pending appeal.[1] Plaintiffs-Appellees consent to the relief requested in this motion.

The Government's petition will raise "substantial questions" for Supreme Court review. In particular, the Proclamation and guidance implemented the Executive's discretionary authority to preemptively deny asylum applications filed by aliens who violate the Proclamation's

---

[1] This condition is without prejudice to the Government requesting a stay from the Supreme Court in the event this Court were to deny this motion for a stay of the mandate.

unchallenged suspension on entry. As the Government has argued, and as Judge Walker explained in his dissenting opinion, "the decision whether asylum should be granted to an eligible alien is committed to the [Executive's] discretion," *INS v. Aguirre-Aguirre,* 526 U.S. 415, 420 (1999), and the plain language of the asylum statute does not give aliens a "right to file frivolous or futile applications." Add.72 (Walker, J., dissenting).[2] Although this Court rejected those arguments, the Court need not agree with the Government or believe that the Supreme Court would reverse if review is granted. The Court need only recognize that the Government's arguments will present "substantial questions" for the Supreme Court's consideration. They plainly do.

There is also "good cause" for a stay of the mandate. Staying the mandate would simply allow the partial stay this Court entered a year ago to remain in place, thereby preserving the status quo ante while the Supreme Court considers the Government's forthcoming petition for a writ of certiorari. The Government has submitted extensive evidence that allowing the district court's injunction against the Executive's

---

[2] All "Add." cites are to the addendum attached to the Petition for Rehearing En Banc, filed on June 8, 2026.

asylum restrictions to go into effect will inflict "severe and far reaching" harm. Add.235-36 (Mullin Decl. ¶14). It will trigger another surge of aliens seeking to unlawfully enter the country, and "provide a significant boon" to the criminal and terrorist organizations that "operat[e] near the border," Add.235-36 (Mullin Decl. ¶14), which stand poised to restart their operations trafficking in narcotics, weapons, and humans, and funneling terrorists and other national security threats into the United States. This Court should not force the country to endure yet another wave of mass illegal immigration and the rampant human suffering that inevitably will follow before the Supreme Court has had a chance to decide whether to grant review.

Absent a stay, the mandate will issue on Thursday, July 30, 2026. In light of this timeline, the Government respectfully requests that the Court rule on this consented-to motion no later than Monday, July 27, 2026, so it can seek emergency relief from the Supreme Court, if necessary.

# STATEMENT

## A.    Statutory Background

The Immigration and Nationality Act ("INA"), *see, e.g.*, 8 U.S.C. §1182(a)(1)-(3), gives the President expansive powers to "suspend" or restrict the "entry of any aliens … into the United States" that he deems to "be detrimental to the interests of the United States."   8 U.S.C. §1182(f); *see also id.* §1185(a)(1) (prohibiting "any alien to depart from or enter" the country, or attempt to do so, "except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe," "[u]nless otherwise ordered by the President").

The Executive Branch also has considerable statutory authority over aliens' ability to obtain relief from removal under the INA, including through asylum.  The INA provides that aliens "may apply for asylum," but granting those applications is entirely discretionary:  "The Secretary of Homeland Security or the Attorney General *may* grant asylum to an alien."  8 U.S.C. §1158(b)(1)(A) (emphasis added).  Thus, "the decision whether asylum should be granted to an eligible alien is committed to the [Executive's] discretion." *Aguirre-Aguirre,* 526 U.S. at 420.

### B. Factual Background

#### 1. The Border Crisis

On Inauguration Day, the country faced an unprecedented crisis at the southern border. Over the preceding four years, federal agents had encountered some 9 million illegal aliens along the border and untold millions more illegally entered by evading detection. Add.181-85 (Ruark Decl. ¶¶2, 5-7). By January 2025, immigration officials were encountering and releasing 1,780 unauthorized aliens per day at the southwest border alone. Add.207-08 (Ruark Decl. ¶40).

This border crisis "imposed substantial negative foreign policy consequences on the United States," Add.240 (Rubio Decl. ¶9), but its most severe consequences materialized at home. Congress has directed that aliens arriving at the border generally shall be ordered removed expeditiously "without further hearing or review" or, if they indicate an intent to apply for asylum or assert a fear of persecution, "shall be detained pending a final determination of credible fear of persecution." 8 U.S.C. §1225(b)(1)(A)-(B). But the unprecedented volume of aliens made it impossible to detain and process the millions of aliens eligible for such expedited removal, or to "verify" the "criminal record or national-security

5

risks associated with the illegal entry of every alien at the southern border." Add.181-90 (Ruark Decl. ¶¶2, 5-17). As a result, "millions of aliens who potentially pose significant threats to health, safety, and national security moved into communities nationwide, imposing substantial costs and constraints on the States." Add.181, 183-96 (Ruark Decl. ¶¶2, 15-23).

This dynamic was exacerbated by the substantial numbers of aliens who expressed an intent to apply for asylum—no matter how frivolous the claim—to secure their presence in the United States "for a lengthy period." Add.186-89 (Ruark Decl. ¶¶11-15). Unable to process this skyrocketing volume, aliens raising meritless asylum claims were released into the country to await a hearing scheduled years in the future. Add.186-87 (Ruark Decl. ¶¶10-11). That, in turn, inflamed the border crisis by incentivizing still more aliens to cross the border illegally with the (well-founded) belief that, if apprehended, they would be released into the country for years. Add.188-89 (Ruark Decl. ¶¶14-15).

International cartels, transnational criminal organizations, and foreign terrorist organizations leveraged the border chaos to perpetrate their illegal activities, including smuggling in narcotics, weapons, and

6

humans.  Add.190-96 (Ruark Decl. ¶¶18-23); Add.249-52 (Lukas Decl. ¶¶5-11).  These criminal organizations "operate with substantial financial resources"—using "advanced technology including drones, night vision equipment, and radios to track and monitor [U.S. Border Patrol]."  Add.191-92 (Ruark Decl. ¶20).  And they operate on both sides of the border.  They "took advantage of the influx of crossings at the southern border to illegally enter the United States."  Add.192-93 (Ruark Decl. ¶21); *see* Add.249 (Lukas Decl. ¶5).  As a result, members of terrorist and criminal organizations such as MS-13 and Tren de Aragua "gained a foothold in, and endangered, communities throughout the United States," including through rampant "murder, assault, and kidnapping."  Add.193-96 (Ruark Decl. ¶¶22-23).

> **2. The President's Proclamation to Secure the Border**

In January 2025, the President invoked his authority under §§1182(f) and 1185(a), as well his inherent constitutional authority, to issue Proclamation 10888.  The Proclamation determines "that the current situation at the southern border qualifies as an invasion," declares that "the entry into the United States … of aliens engaged in the invasion across the southern border is detrimental to the interests of the

United States," and temporarily suspends the "entry into the United States of such aliens." 90 Fed. Reg. 8333, 8335 (Jan. 20, 2025).

The Proclamation enforces the entry bar in two primary ways. First, it directs that aliens who violate the entry bar be "repel[led], repatriate[d], or remove[d]" from the United States. 90 Fed. Reg. at 8336. Second, in an effort to turn off one of the primary magnets for illegal immigration, the Proclamation prohibits aliens who enter the United States in violation of the entry bar from "invoking [the] provisions of the INA that would permit their continued presence in the United States, including, but not limited to" the asylum statute, 8 U.S.C. §1158. *Id.*[3]

The Department of Homeland Security issued guidance to implement the Proclamation's directives. JA.97-170. The guidance instructs that aliens who violate the entry suspension may not apply for asylum. JA.101-02.

---

[3] The Proclamation also prohibits invoking provisions authorizing withholding of removal, 8 U.S.C. §1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. §208.18. The injunction against those aspects of the Proclamation and guidance has not been stayed.

## C.     Procedural Background

Plaintiffs filed this lawsuit alleging that the Proclamation and implementing guidance are unlawful. JA.34-42. The district court granted in part plaintiffs' motions for class certification and partial summary judgment. JA.189-316. The court vacated the guidance and enjoined the Government from removing plaintiffs or class members "using non-statutory repatriation or removal proceedings" and "without complying with the asylum statute." JA.301-19.

A motions panel of this Court (Millett, Pillard, Katsas, JJ.) granted in part the Government's motion for a stay pending appeal. Relevant here, Judge Millett and Judge Katsas concluded that the Government was likely to succeed in showing that the Proclamation and guidance "effect an upfront, categorical discretionary denial of asylum." Add.124, 156-59 (Millett, J.); Add.175 (Katsas, J.).

The merits panel (Pillard, Walker, Childs, JJ.) issued a split decision affirming the district court's judgment. Relevant here, the majority held that the Executive's discretionary authority over asylum does not include the authority to preemptively deny asylum applications

and foreclose aliens' ability to apply for asylum. Add.29-40. Judge Walker dissented from that portion of the panel decision. Add.72-83.

On July 23, 2026, this Court denied the Government's petition for rehearing en banc. Absent a stay, the mandate will issue on July 30, 2026. *See* D.C. Cir. R. 41(a)(1).

## ARGUMENT

This Court may stay the mandate if a petition for certiorari will present "substantial question[s]" for Supreme Court review and there is otherwise "good cause." Fed. R. App. P. 41(d)(1); *see also* D.C. Cir. R. 41(a)(2) (requiring movant for stay of mandate to provide "facts showing good cause for the relief sought"). This case readily satisfies those standards.

## I. The Government's petition for certiorari will present substantial questions for Supreme Court review.

The Government's forthcoming petition will present "substantial question[s]" for Supreme Court review, including about the Proclamation and guidance's asylum provisions that this Court allowed to remain in effect through the partial stay it granted a year ago. Fed. R. App. P. 41(d)(1). The grant of asylum is purely a matter of Executive discretion: the "Secretary of Homeland Security or the Attorney General *may* grant

asylum" to an eligible alien. 8 U.S.C. §1158(b)(1)(A) (emphasis added). As the Supreme Court has long recognized, "the decision whether asylum should be granted to an eligible alien is committed to the Attorney General's discretion." *Aguirre-Aguirre*, 526 U.S. at 420; *see Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013) (stating that asylum is a "form[] of discretionary relief"). As the Government has argued, the Proclamation (and guidance) are a straightforward exercise of that statutory authority. *See, e.g.*, Opening Br. 44-45.

It is true that a majority of the panel disagreed with the Government's arguments, reasoning that the asylum statute secures to each alien a "right to apply for asylum," Add.30, even if the Executive has already indicated those applications will be denied. Add.30-41. On the other hand, Judge Walker's thorough dissenting opinion assessed the merits differently, concluding that the asylum statute "do[es] not … confer[] a right to file frivolous or futile [asylum] applications." Add.72; *see* Add.72-83. In granting a partial stay, Judges Millett and Katsas likewise found the Government likely to succeed on its asylum arguments. Add.157-58 (Millett, J.); Add.175 (Katsas, J.).

11

Those and other arguments raise substantial questions for Supreme Court review. Granting a stay of the mandate under Rule 41 does not require this Court to agree that the Supreme Court is likely to reverse the panel's decision. By granting a stay of the mandate, the Court merely keeps its partial stay in place and affords the Supreme Court an orderly opportunity to consider the case and decide whether to grant review—and if it does, to take the time the Supreme Court needs to render a decision. *See* Fed. R. App. P. 41(d)(2)(B)(ii).

This Court should allow the Supreme Court that opportunity, because the Government's arguments in this case are at the very least substantial. Indeed, the Court has repeatedly granted certiorari to review decisions prohibiting the Executive from implementing its authority under the immigration laws, even when the circuits are not divided. *See, e.g.*, *Mullin v. Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741 (June 25, 2026); *Mullin v. Doe*, 609 U.S. ---, 2026 WL 1825840 (June 25, 2026). And the Court has also granted certiorari to review cases involving the President's exercise of his authority under §1182(f). *See Trump v. Hawaii*, 585 U.S. 667 (2018).

## II. There is good cause to stay the mandate pending Supreme Court review.

There is also "good cause" for the requested consented-to stay. Fed. R. App. P. 41(d)(1). Absent a stay of the mandate, the partial stay pending appeal—which has been in effect for nearly a year—will dissolve upon issuance of the mandate. The consequences of that outcome will be dire, as the Government has established with declarations from the Secretaries of the Departments of Homeland Security, State, and War, and the Principal Deputy Director of National Intelligence. Add.228-36 (Mullin), 237-43 (Rubio), 244-47 (Hegseth), 248-55 (Lukas).

The Proclamation has "had a monumental impact on illegal border crossings and restoring operational control at the southern border." Add.182-83 (Ruark Decl. ¶4); *see* Pet. for Reh'g En Banc at 18. And that is true of the Proclamation's restrictions on asylum in particular, which prevent aliens who evade the Proclamation's entry bar from exploiting the asylum process through the filing of frivolous applications and remaining in the United States for potentially years. Add.188-89 (Ruark Decl. ¶14); Add.235 (Mullin Decl. ¶13); Add.246 (Hegseth Decl. ¶6); *see* Pet. for Reh'g En Banc at 18.

Enjoining the Proclamation's restrictions on asylum would thus be devastating for border security; it would activate one of the key magnets for illegal migration and reward aliens who violate the Proclamation's entry bar with months or years in the United States simply because they pursue meritless asylum claims. Add.235 (Mullin Decl. ¶13); Add.188, 221 (Ruark Decl. ¶¶14, 54). All this will, in turn, "provide a significant boon" to the criminal organizations "operating near the border." Add.235-36 (Mullin Decl. ¶14). In short, allowing the injunction to go into full effect will spark a new wave of illegal immigration that will re-empower the foreign criminal and terrorist organizations and international cartels that exploited the southern border during the prior administration. *See, e.g.*, Pet. for Reh'g En Banc at 17-21. "Good cause" plainly exists to avoid those disastrous consequences.

## CONCLUSION

The Court should stay the issuance of the mandate in this appeal through August 24, 2026, to be extended upon the filing of a petition for a writ of certiorari until the Supreme Court's disposition of the petition and, if granted, its decision on the merits. In addition, the Court should order that the requested stay of the mandate be conditioned on the

Government at this juncture forgoing filing an application with the Supreme Court to stay those portions of the district court's injunction not covered by this Court's partial stay pending appeal.

Respectfully submitted,

| | |
|---|---|
| PATRICK GLEN | BRETT A. SHUMATE |
| KATHERINE J. SHINNERS | *Assistant Attorney General* |
| *Senior Litigation Counsel* | DREW C. ENSIGN |
| *Office of Immigration Litigation* | *Deputy Assistant Attorney* |
| *General Litigation and Appeals Section* | *General* |
| | BENJAMIN HAYES |
| | *Senior Counsel to the Assistant* |
| | *Attorney General* |

*/s/ Benjamin Hayes*
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
(202) 514-8214
*Benjamin.T.Hayes@usdoj.gov*

*Counsel for Appellants*

July 2026

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-face and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,617 words, excluding the parts of the motion exempted under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

*/s/ Benjamin Hayes*

Benjamin Hayes

# CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2026, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Benjamin Hayes*

Benjamin Hayes